Craig Jonathan WILLOVER,
Appellant,

v.

The STATE of Texas.

No. 746–01.

Court of Criminal Appeals of Texas.

March 13, 2002.

---

107. Op. Tex. Att'y Gen. No. JC–0396 (2001).

Toni Aninao, Houston, for Appellant.

Matthew Paul, State's Attorney, Betty Marshall, Assistant State's Attorney, Austin, for the State.

## OPINION

HOLCOMB, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, JOHNSON, HERVEY, and COCHRAN, JJ., joined.

The issue presented is whether the First Court of Appeals erred in holding that the trial court erred in excluding from evidence two videotaped interviews of the victim. We hold that the Court of Appeals did err.

I

In April 1998, appellant, Craig Jonathan Willover, was tried for aggravated sexual assault. *See* Tex. Pen.Code § 22.021. At that trial, the State presented evidence that appellant sexually molested his eight-year-old daughter, T.W. The State's evidence included testimony from a school counselor, a therapist, a physician, and two investigative caseworkers. After the State rested, appellant offered in evidence two videotapes of T.W.'s two separate interviews with Lisa Holcombe, a child abuse specialist. During the first interview, conducted on April 4, 1997, T.W. stated that no one had touched her in an inappropriate place but later stated that her brother had touched her in an inappropriate place. During the second interview, conducted on June 6, 1997, T.W. stated that appellant had touched her "private parts" and also had touched her with his "private parts."

The State objected to the admission of the videotapes, arguing they were inadmissible hearsay. Appellant then attempted to offer the videotapes under Article 38.071 of the Texas Code of Criminal Procedure. Section 2(a) of that article provides that "[t]he recording of an oral statement of the child made before the indictment is returned or the complaint has been filed is admissible into evidence if the court makes a determination that the factual issues of identity or actual occurrence were fully and fairly inquired into in a detached manner by a neutral individual experienced in child abuse cases that seeks to find the truth of the matter." *Id.* The section, in effect, creates an exception to the otherwise applicable hearsay rule. *See discussion infra.* Section 1 of the article, however, provides that "[t]his article applies only to a hearing or proceeding in which the court determines that [the]

child ... would be unavailable to testify in the presence of the defendant...." *Id.*

The trial court viewed the first videotape in its entirety, considered the arguments of the defense and the State, and, in a hearing outside the presence of the jury, questioned T.W. The trial court then concluded that Article 38.071 was inapplicable and the videotapes were inadmissible because (1) the interviews were conducted after the complaint was filed and (2) T.W. was competent to testify.

Appellant then called T.W. to testify. On direct examination, T.W. answered "no" when asked "Has anybody ever done anything that bothered you?" and "Have you been touched anywhere that's bothered you?" On cross-examination, however, T.W. testified as follows:

Q. Okay. Did your daddy, Craig, ever get into bed with you?

A. (Witness nods head.)

Q. You have to answer out loud. You have to say the word, sweetie.

A. Yes.

Q. And when he got into bed with you, how did he get up there to your bed?

A. Climbed on ladder.

Q. Climbed on ladder. Okay. And when he got in bed with you, did he ever put his "P" in your "P"?

A. Yes.

Q. Okay. And, sweetie, can you show me what part you call your "P"? Can you point to it? Can you show me—I'm sorry. Honey, can you just point real quick to where you call your "P"? Would it be better if I showed you a picture that you can show me on or can you show me on Ashley [toy doll]? Can you show me on your bear? Which part is her "P"? Can I see her? Can you just point real quick which part would be her "P"?

A. It's in front.

Q. Well, which part? Show me real quick. Can you touch it for me just real quick?

A. (Witness indicates.)

Q. Okay. That's fine. And remember what we said? What do we call this part of us back here? Our behind? Is this my behind?

A. Yes.

Q. It's kind of a big wide behind, but we talked about that. Okay. And did your daddy, Craig, ever put his "P" in your behind?

A. Yes.

Q. And are you telling me the truth, sweetie?

A. Yes.

Appellant next called Holcombe, the child abuse specialist who conducted the videotaped interviews with T.W. Holcombe testified that she interviewed T.W. on two occasions and that the interviews were recorded. She further testified that, during the first interview, T.W. denied that anyone had touched her but later stated that her brother had touched her.[1] At this point, appellant again sought to have the videotapes admitted in evidence, and the following exchange took place:

DEFENSE COUNSEL: And we're alleging that the tape has impeachment

---

1. Thus, the prior inconsistent statements that appellant sought to have admitted via the videotapes, actually did come in via the testimony of Holcombe.

value and we should be able to use it before the jury for impeachment purposes.

COURT: I have no editing equipment. How are we going to show ... you can't show the tape in its entirety.

DEFENSE COUNSEL: I am willing to show the tape in its entirety because I believe it's pertinent to the child's testimony. It's impeachment of the child's testimony and I think that is why it is admissible for that basis. There's direct contradiction of the child's testimony before the jury and the witness has interviewed the child as referred to her by CPS and the tape directly contradicts the child's testimony and is valued impeachment evidence.

Thus, it is clear that, although appellant did not actually recite the specific rule of evidence he was relying upon, appellant sought to admit the videotapes for impeachment purposes. Appellant did not argue, nor was there any discussion at trial, that the tapes were not hearsay or that the videotapes were admissible under any exception to the hearsay rule other than Article 38.071 or for impeachment purposes.

The parties then resumed the questioning of Holcombe. On cross-examination, Holcombe testified that she could not come to a conclusion as to whether a sexual assault occurred. After Holcombe finished testifying, the defense rested, and no further offer of the videotapes was made.

The jury subsequently found appellant guilty of sexual assault and assessed punishment at imprisonment for life and a $5,000 fine.

On appeal, appellant argued, among other things, that the trial court erred in refusing to admit the two videotaped interviews of T.W. The First Court of Appeals agreed with appellant and held that, pursuant to Texas Rule of Evidence 801(e)(2),[2] the videotapes were not hearsay and thus were improperly excluded. *Willover v. State,* 38 S.W.3d 672 (Tex.App.-Houston[1st Dist.] 2000). The First Court reasoned that had appellant established the proper predicate, as required by Texas Rule of Evidence 613(a),[3] the videotaped statements would have been admissible as

---

2. The rule provides, in relevant part:

 (e) Statements Which Are Not Hearsay. A statement is not hearsay if:
 (2) *Admission by party-opponent.* The statement is offered against a party and is:
 (A) the party's own statement in either an individual or representative capacity;
 (B) a statement of which the party has manifested an adoption or belief in its truth;
 (C) a statement by a person authorized by the party to make a statement concerning the subject;
 (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship; or

 (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

3. The rule provides: "In examining a witness concerning a prior inconsistent statement made by the witness, whether oral or written, and before further cross-examination concerning, or extrinsic evidence of, such statement may be allowed, the witness must be told the contents of such statement and the time and place and the person to whom it was made, and must be afforded an opportunity to explain or deny such statement. If written, the writing need not be shown to the witness at that time, but on request the same shall be shown to opposing counsel. If the witness unequivocally admits having made such statement, extrinsic evidence of same shall not be admitted. This provision does not apply to

prior inconsistent statements, but, since T.W., as the complaining witness, was a party opponent, the predicate requirements of Rule 613(a) need not be met as Rule 613(a) does not apply to the admissions of a party opponent, and therefore, the trial court erred in excluding the videotapes. We granted the State's petition for discretionary review to determine whether the Court of Appeals erred. *See* Tex.R.App. Proc. 66.3.

In its brief to this Court, the State argues, among other things, that the Court of Appeals erred in failing to uphold the trial court's ruling on any theory of law applicable to the case. In support of its argument, the State cites *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App.2000), and *Romero v. State*, 800 S.W.2d 539 (Tex. Crim.App.1990).

## II

■ In considering a trial court's ruling on the admissibility of evidence, an appellate court must determine whether the trial court abused its discretion. *Montgomery v. State*, 810 S.W.2d 372 (Tex.Crim.App.1990) (opinion on motion for rehearing). In other words, the appellate court must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Ross*, 32 S.W.3d at 856; *Romero*, 800 S.W.2d at 543–544. Finally, an appellate court must review the trial court's ruling in light of what was before the trial court at the time the ruling was made. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App.2000).

Here, the Court of Appeals held that even though the parties treated the evidence in question as hearsay, it was actually not hearsay and, therefore, admissible. *Willover*, 38 S.W.3d at 679. In doing so, the Court of Appeals failed to properly apply the abuse of discretion standard of review.

■ Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex.R. Evid. 801(d). As a general rule, hearsay evidence is inadmissible unless it falls within one of the many exceptions. *See* Tex.R. Evid. 802. In order to have evidence admitted under a hearsay exception, the proponent of the evidence must specify which exception he is relying upon.[4] Here, the State, appellant, and the trial court all assumed the videotapes were hearsay and treated them as such. No one at trial disputed that the videotapes were hearsay. Thus, it was up to appellant, not the trial court,[5] to specify which

---

admissions of a party-opponent as defined in Rule 801(e)(2)."

**4.** *See* Goode, Wellborn & Sharlot, *Texas Practice: Guide to the Texas Rules of Evidence: Civil and Criminal* § 103.2, p. 13–14:

> The basic principle that runs through all doctrines about preserving error is party responsibility. It is not the role of the judge to present evidence, or to render the proponent evidence into a form required by the rules of evidence; nor is it his responsibility to exclude or to limit evidence as provided by evidence law, except insofar as

the party opposing the evidence precisely and timely requests that he do so.
> ❊ ❊ ❊
> Whichever party complains on appeal about the trial judges action must, at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule in question and its precise and proper application to the evidence in question.

**5.** The Court of Appeals essentially held that since the videotapes were "not hearsay," the trial court's exclusion of the videotapes as hearsay was not a correct theory of law, and

exception to the hearsay rule he was relying upon or to specify how the evidence was not hearsay.[6] Accordingly, appellant sought to admit the videotapes[7] for impeachment purposes, specifically as prior inconsistent statements.[8] The trial court subsequently refused to admit the videotapes into evidence.

 The only reason given by the trial court for excluding the videotapes was "I have no editing equipment" and "you can't show the tape in its entirety." Considering the facts before, and the arguments presented to, the trial court (i.e., the parties were in agreement that the videotapes were hearsay and appellant sought to admit the tapes into evidence for impeachment purposes), we cannot say the trial court abused its discretion in excluding the videotapes. Our review of the videotapes reveals that some of the statements were arguably prior inconsistent statements, other statements were arguably prior consistent statements, and many of the statements on the videotapes were arguably irrelevant and inadmissible hearsay.[9] Hence, it was reasonable for the trial judge to conclude that appellant was

---

thus the videotapes could not have been excluded. This is incorrect as it assumes that the trial court has a duty to make the proper proffer or objection for the parties. *See discussion supra.* Moreover, in so holding, the Court of Appeals failed to consider the trial court's ruling in light of what was before the trial court at the time the ruling was made (i.e. that the parties were treating the statements as hearsay).

6. *See e.g.* Tex. Rule Evid. 801(e)(1) (certain prior statements by a witness are defined as not hearsay) and Rule 801(e)(2) (admissions of a party opponent are defined as not hearsay).

7. Initially, it is clear that appellant sought, unsuccessfully, to admit *both* videotapes into evidence under Article 38.071. However, appellant then, arguably, sought to admit only the *first* tape as impeachment evidence. At trial appellant argued that *"the tape* has impeachment value" and that he is "willing to show *the tape* in its entirety." Offering only the first tape for impeachment purposes makes sense as it is on the first tape where T.W. claims "no one touched her" and that "her brother touched her." Presumably, those were the prior inconsistent statements that appellant wanted to use to impeach T.W. But, it is unclear, based on the record, which tape appellant refers to when he argues that *"the tape* has impeachment value." However, appellant argued both to the Court of Appeals and to this Court (and the Court of Appeals held) that both videotapes should have been admitted. Hence, we will presume that ap-

pellant sought, at trial, to admit both videotapes for impeachment purposes.

8. Texas Rule of Evidence 613 allows into evidence (for impeachment purposes) proof of a witness's prior inconsistent statements (provided the proper predicate is established). Such prior inconsistent statements are considered hearsay and, unless they fall within some hearsay exception, they are admissible for impeachment purposes only (as opposed to substantive purposes). *See* Goode, Wellborn & Sharlot, *Texas Practice: Guide to the Texas Rules of Evidence: Civil and Criminal* § 613.2, p. 638–639.

9. Even if the out-of-court statements on the videotapes were "not hearsay," as the Court of Appeals held, the statements still must meet other requirements for admissibility, such as relevance. *See* Tex. Rule Evid. 402; *see also* Mueller & Kirkpatrick, *Federal Evidence* § 411, p. 217 ("Of course the fact that a statement fits FRE 801(d)(2)(A) does not insure its admissibility. While such a statement cannot be excluded as hearsay, it may still be excluded on [other] grounds...."). Here, the first videotape is 18 minutes in length while the second videotape is 33 minutes in length. During these lengthy interviews, T.W. spends time answering questions such as "What do you like doing at school?," "What kind of things do you do for fun?" and "Do you like playing outside?" Clearly, the trial court could have reasonably concluded that the answers to those questions were inadmissible as irrelevant. Thus, even if appellant had argued at trial that statements on the videotape

attempting to offer into evidence a video-tape containing both admissible and inadmissible statements. When a trial judge is presented with a proffer of evidence containing both admissible and inadmissible statements and the proponent of the evidence fails to segregate and specifically offer the admissible statements, the trial court may properly exclude all of the statements. *Jones v. State*, 843 S.W.2d 487, 492–493 (Tex.Crim.App.1992) (overruled on other grounds), cert. denied, 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993). In *Jones* we explained that:

> "Inadmissible hearsay testimony does not become admissible simply because it is contained within an admissible document or transcript. The trial court need never sort through challenged evidence in order to segregate the admissible from the excludable, nor is the trial court required to admit only the former part or exclude only the latter part. If evidence is offered and challenged which contains some of each, the trial court may safely admit it all or exclude it all, and the losing party, no matter who he is, will be made to suffer on appeal the

consequences of his insufficiently specific offer or objection.... When evidence which is partially admissible and partially inadmissible is excluded, a party may not complain upon appeal unless the admissible evidence was specifically offered." *Id.* (footnotes and some punctuation omitted).

In sum, appellant sought to introduce both videotapes in their entirety into evidence. The trial court, after viewing the first videotape, listening to the in-court testimony of T.W., and considering the arguments of counsel, could have reasonably concluded that the videotapes contained both admissible and inadmissible evidence. In such a situation, the trial court was not required to sort through and edit the videotapes in order to determine which statements might impeach the witness. *Id.* That task was appellant's responsibility. Since appellant did not specify and extract the statements he wanted to use for impeachment purposes, it was not an abuse of discretion for the trial court to exclude the videotapes, and the Court of Appeals erred in holding otherwise.[10]

Accordingly, we reverse the judgment of the Court of Appeals and remand the case

---

were not hearsay pursuant to Texas Rule of Evidence 801(e), the trial court still could have reasonably concluded that many of the statements on the videotapes were nonetheless irrelevant and therefore, inadmissible.

**10.** Because we hold that the Court of Appeals erred in holding that the trial court abused its discretion, we need not address the Court of Appeals holding that "when [Rule 801(e)(2)] uses the term 'admission by party-opponent,' it includes those of the defendant and the complaining witness." *Willover*, 38 S.W.3d at 676. However, we note that the other Courts of Appeals in Texas that have considered the issue, have all reached the opposite conclusion. *See e.g. Owens v. State*, 916 S.W.2d 713, 717–18 (Tex.App.-Waco 1996, no pet.) ("The State, not the victim, is the party-opponent of the accused in a criminal proceeding."); *Halstead v. State*, 891 S.W.2d 11, 12 n. 1 (Tex.

App.-Austin 1994, no pet.) ("We conclude that the complainant in a criminal prosecution is not a party within the meaning of Rule 801(e)(2)"). Those decisions are in line with the majority of other jurisdictions who have considered the issue. *See e.g. Goodson v. State*, 566 So.2d 1142, 1148 at n. 11 (Miss. 1990) (Because the victim is not a party opponent within the meaning of Rule 801(d)(2), the victims statements may not be received into evidence as an admission.); *State v. Antillon*, 229 Neb. 348, 426 N.W.2d 533, 538 (1988) ("[I]t is clear that the victim, as a victim-witness, did not meet the legal definition of party to the case. His role in the action was not to bring or defend against charges, but merely to provide testimony about the allegations. As such, he was not a party-opponent...."), superceded by statute on other grounds as stated in *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989);

to that court so that it may consider appellants's remaining points of error.

WOMACK, J., joined the opinion of the Court except with respect to footnote number ten.

PRICE and KEASLER, JJ., joined only the judgment of the Court.

*People v. Deskin,* 60 Ill.App.3d 476, 17 Ill.Dec. 757, 376 N.E.2d 1086, 1090 (1978) ("In a criminal case, the party opponent to the defendant is the People of the State of Illinois. The victim, though also a complainant, is merely another witness.").