Opinion issued August 8, 2002














In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-98-01066-CR

____________


CRAIG JONATHAN WILLOVER, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 9th District Court 

Waller County, Texas

Trial Court Cause No. 97-05-8880






ON REMAND FROM THE 

TEXAS COURT OF CRIMINAL APPEALS


 A jury found appellant guilty of aggravated sexual assault and assessed
punishment at life in prison. On appeal, we reversed and remanded the judgment of
the trial court. Willover v. State, 38 S.W.3d 672, 679 (Tex. App.--Houston [1st Dist.]
2000). The Court of Criminal Appeals reversed the decision of this Court and
remanded the cause for us to consider appellant's remaining points of error. (1)
 Willover
v. State, 70 S.W.3d 841, 847-48 (Tex. Crim. App. 2002). We affirm.FACTS

 The complainant, T.W., appellant's biological daughter, was a developmentally
challenged, eight-year-old girl. One day, she pulled her pants down at school and
exposed herself. On another occasion, she told the school principal that she slept up
high and that her father would get on her back or on top of her. The principal referred
T.W. to a professional counselor.

 Timothy A. Gregory, of Children's Protective Services, was T.W.'s counselor. 
Gregory had approximately 5,000 hours experience dealing with sexually abused
children. Because T.W. was not very verbal, Gregory had the child draw pictures. 
He asked T.W. if she remembered telling the school principal about someone hurting
her. T.W. nodded and showed how she was hurt by pointing to her lower body area. 
When the counselor drew the outline of a human body and asked T.W. to point to the
area where she was hurt, she pointed in the drawing to the area of her vagina. When
asked who had hurt her, T.W. said, "Daddy." T.W. said her daddy put his "saw" or
"salt" in her and that it hurt and was itchy. When asked to draw a picture of what
"saw" or "salt" looks like, T.W. drew an object about 10 inches long by 2 inches
wide, and said that "white, sticky stuff" comes out of it. Using two dolls, T.W.
demonstrated by placing one doll on top of the other. She used a thrusting motion
with the doll that represented appellant. The counselor formed the opinion that T.W.
had been sexually abused.

 Andrea Hardeman, an investigative caseworker with the Texas Department of
Protective and Regulatory Services, received a referral regarding T.W. and went to
the family home on February 14, 1997. Appellant's wife answered the door, but
informed Hardeman she could not come inside because there were dogs inside that
would bite. Hardeman testified that she was unable to obtain more information at that
point, but left her card with instructions that appellant was to telephone her. 
Appellant telephoned on February 19 and scheduled an appointment, but later
canceled the appointment.

 Kimberly White, who was employed as lead investigator with the Waller
County Children's Protective Services, related that T.W. was removed from her home
due to complainant's outcry of sexual abuse allegedly committed by appellant. White
testified that T.W. and her brother were placed in a therapeutic foster home, where
their behavior and demeanor improved.

 Lisa Holcombe, a counselor at the Children's Assessment Center, interviewed
T.W. on April 3, 1997 and June 6, 1997. During the first interview, T.W. said that
her brother, and no one else, had touched her private parts. During the second
interview, T.W. told Holcombe that appellant touched her private part with a stick. 
Holcombe was unable to conclude from the two interviews that appellant had
sexually abused T.W.

 Dr. Mariam Chacko, an attending physician at the Child Protective Health
Clinic at Texas Children's Hospital, examined eight-year-old T.W. on April 17, 1997. 
Examination of the external portion of the vulva and the vaginal opening showed no
abnormalities. Examination of the anal area revealed a scar. When Dr. Chacko asked
T.W. if her father had touched her anal area with his "privates," she nodded yes and
said this occurred in the bathroom. In Dr. Chacko's opinion, the condition of T.W.'s
anal area was consistent with trauma from sexual abuse. Dr. Chacko testified that
although there was no way to tell the age of the scarring, it was consistent with sexual
abuse. Vickie Smith, a therapist for a therapeutic foster care agency called the Arrow
Project, had been T.W's therapist for a year. When she testified at trial, Smith, who
was familiar with characteristics exhibited by sexually abused children, observed the
same characteristics in T.W. as Dr. Chacko. 

 Appellant called T.W. to testify. T.W. testified on direct examination that
appellant did not touch her private parts. On cross-examination, however, she
testified that appellant put his "P" in her "P" and in her "butt." On redirect
examination, appellant's counsel brought Lisa Holcombe into the courtroom and
asked T.W. if she remembered speaking with Holcombe the year before. T.W. agreed
with appellant's counsel that she had told Holcombe that appellant had put his "P"
in her "P" and "behind" four times. 

 We considered only appellant's first point of error in our previous disposition
of this case. Willover, 38 S.W.3d at 679. We now consider appellant's remaining
seven points of error.

EXTRANEOUS CRIME OR BAD ACT

 In his fifth and sixth points of error, appellant contends (1) the trial court
committed fundamental error at the punishment stage by failing to instruct the jury
not to consider appellant's extraneous crimes or bad acts unless they were proven
beyond a reasonable doubt and (2) the trial court erred by not defining the term
"beyond a reasonable doubt." Appellant specifically points to his Pennsylvania
misdemeanor convictions as the extraneous crimes or bad acts.

 At the punishment stage of a noncapital prosecution, evidence may be offered
by either party "as to any matter the court deems relevant to sentencing" including,
but not limited to, the defendant's prior criminal record, his reputation and character,
the circumstances of the offense, and extraneous crimes and bad acts shown beyond
a reasonable doubt to have been committed by the defendant. Tex. Code Crim.
Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2002). Only extraneous crimes and
bad acts must be shown beyond a reasonable doubt. See id; Sanders v. State, 69
S.W.3d 690, 692-94 (Tex. App.--Texarkana 2002, pet. dism'd w.o.j.). 

 In this case, appellant's prior misdemeanor convictions are not evidence of
extraneous crimes and bad acts. Rather, they constitute a prior criminal record. 
Therefore, appellant was not entitled to an instruction that extraneous crimes and bad
acts be proved beyond a reasonable doubt. We hold that the trial court did not err by
not including this instruction in the charge to the jury.

 We overrule appellant's fifth and sixth points of error.

 The rest of the opinion does not meet the standards for publication and is
ordered not to be published. See Tex. R. App. P. 47.4. The judgment is affirmed.





T.W.'S TRUTHFULNESS

 In his second point of error, appellant contends the trial court erred by allowing
the first witness, T.W.'s school counselor, to testify to the truthfulness of the T.W. 
Appellant specifically complains about the following testimony:

 State: As far as T.W.'s - you said her emotional
state was about the age of a three or four-year-old?



 That's correct.



 State: As far as her verbal skills, how would you
define the age range of her verbal skills?



 Verbal skills were extremely delayed also. I 
 would say, you know, four years of age to be 
 correct.


 

 State: As far as her intellectual skills, did you make
any determination about those?



 I did not assess her intellectual skills, did not.


 

 State: Based on your own experience in
interviewing sexually abused children through
your time with CPS, working through CPS -- 


 Defendant: Object. It's not relevant to the case.


 Court: Counsel, would you let her finish her question
before you object?


 State: Did you form an opinion about T.W.'s ability
to be untruthful with you as regards to what
she told you?



 Could you ask the question again? I didn't 
 hear that.


 

 State: Based on your own experience with sexually
abused children, did you form an opinion
about T.W.'s ability to be untruthful with you
about what she told you?


 Defendant: Objection. Objection. His dealings with
other people has got nothing to do- it's not
relevant and it's not material to whether this
child is telling the truth or not. It's not
material and it's not relevant.


 Court: Are you talking about his experience or are
you talking about the question?


 Defendant: I am talking about the question where he is
asked based on your experience with all kinds
of other people. He said 5,000 hours
including adults. What his opinion is about
her veracity, the child's veracity, what his
self-serving declaration of the child's veracity
in his study of other people is not relevant to
her. It's not a proper predicate.


 Court: Just delete that portion of your question and 
 ask the remainder, Ma'am.


 State: Okay.


 State: Did you form an opinion about T.W.'s ability
to be untruthful with you?



 Yes, I did.


 

 State: And what is that opinion?



 My opinion is that she was being truthful with 
 me.


 

 State: And what do you base that opinion on?



 I base that opinion on more than 5,000 hours 
 of professional work and most of that 5,000 
 hours was with sexual abuse victims and 
 perpetrators and their families.


 

 State: And as far as T.W.'s emotional maturity,
would she be emotionally mature enough to
make up a story like this?


 Defendant: Object. He has said that he didn't study her
intellectual background. There is no
testimony about it. She is trying to get him to
express his opinion about her intellectual
abilities, and he's already said he didn't even
test her on it.


 None of appellant's objections comport with his contentions on appeal. 
Consequently, we cannot review his point. See Knox v. State, 934 S.W.2d 678, 687
(Tex. Crim. App. 1996); Tex. R. App. P. 33.1(a).

 We overrule appellant's second point of error.

OUT-OF-STATE CONVICTIONS

 In his third point of error, appellant contends the trial court erred in admitting
evidence of appellant's previous misdemeanor convictions from the State of
Pennsylvania during the punishment phase. More specifically, appellant complains
that the State failed to prove that he was the identical person previously convicted of
the misdemeanor offenses in Pennsylvania.

 When an out-of-state penitentiary packet has been introduced as evidence of
a prior criminal record at the punishment phase, the State must establish, either by
proof or request, that the trial judge took judicial notice of what our sister state
considers sufficient documentary proof of a final conviction. See Langston v. State,
776 S.W.2d 586, 587-88 (Tex. Crim. App. 1989). In the absence of proof of laws of
the other state, we will presume that the law is the same as that of Texas. Id. Because
the State asked the trial judge to take notice only of laws that required the collection
and maintenance of the documents tendered by the State, we will address whether the
documents offered by the State are sufficient to support a finding that appellant was
the identical person who committed the Pennsylvania misdemeanors.

 To be considered as evidence of a final conviction in Texas, a penitentiary
packet must contain a properly certified judgment and sentence. Id. Although
penitentiary packets are admissible, they are not normally sufficient, standing alone,
to prove the prior convictions. See Beck v. State, 719 S.W.2d 205, 210 (Tex. Crim.
App. 1986). The State must show independent evidence that appellant is the person
previously convicted. Id. Independent evidence can include expert testimony
identifying known fingerprints of the defendant with the fingerprints in the
penitentiary packet, testimony by the defendant, or testimony of a witness who was
present when the defendant was convicted and identifies the defendant as the
previously convicted person. Id. These are not the exclusive means to prove a
defendant's prior convictions, however. See Littles v. State, 726 S.W.2d 26, 32 (Tex.
Crim. App.1984). If the evidence to prove a prior conviction is clearly sufficient no
error will be found, despite the unorthodox nature of the proof. Id.
 If it relies on documents other than a judgment, the State must show that the
documents offered are the functional equivalents of the judgment and sentence. See
Langston, 776 S.W.2d at 587. No court has exhaustively defined what constitutes the
functional equivalent of a judgment. However, the Texarkana Court of Appeals has
held that an abstract of a judgment was the functional equivalent of the judgment and
sentence. See Mitchell v. State, 848 S.W.2d 917, 918 (Tex. App.--Texarkana 1993,
pet. ref'd). The Mitchell penitentiary packet contained the following: the cause
number, the defendant's name, a statement that the defendant was found guilty of a
felony and sentenced, and the judge's signature. Id.

 Here, the State introduced several documents in the form of a penitentiary
packet to prove that appellant was previously convicted of three misdemeanor
offenses in Pennsylvania. These included corruption of minors, indecent exposure,
and indecent assault. The documents included an "Order of Court," which included
a statement that appellant had pleaded guilty, the sentencing by the Pennsylvania
Court of Common Pleas, the signature of the judge of that court, fingerprints, and an
affidavit of probable cause. The State's expert testified that appellant's fingerprints
were identical to the fingerprint sheet included in the Pennsylvania penitentiary
packet. Furthermore, the trial judge stated:

 Going to exhibit number 11, looking at the affidavit of
probable cause, it mentions that the complainant visited her
Uncle Craig and Aunt Tammy and their baby, T.W. And
looking at the State's exhibit number 14 and the blow up
which is State's exhibit number 15 the OTN is C323238-6,
date of birth 12-11-62, name is Craig Jonathan Willover,
and this is a faxed copy of a fingerprint card. At the
bottom it says, "This is a true and correct copy of the
fingerprints of Craig Jonathan Willover as contained in the
file of the Pennsylvania State Police, Central Repository,
signed Captain John K. Thierwechcer, the Records and
Identification Division Pennsylvania State Police." There
is a seal on there and again this is a faxed copy. Attached
to the judgment envelope is an envelope stamped U.S.
Postage Indiana, Pennsylvania after five days return to
Linda Moore Mack, Prothonary and Clerk of Courts. 

 . . . .


 Well, counsel, I have just shown you the fax, the phone
numbers, the original envelope, the names, the address.

 . . . .


 What makes everything reliable is the cross-reference of
the numerics, the names, the date of birth. It would be
impossible for somebody to create an affidavit in 1989 and
in anticipation of this case using the name Craig Willover,
Tammy, and T.W.


The information contained in the penitentiary packet from Pennsylvania identified
appellant and was reliable and thorough. We hold that the trial court did not err by
admitting that evidence during the punishment phase of appellant's trial.

 We overrule appellant's third point of error.

JURY CHARGE

 In his fourth point of error, appellant contends the trial court erred by charging
the jury on a theory of aggravated assault not supported by the evidence. Specifically,
appellant claims that because the State presented no evidence of vaginal rape, the jury
charge should not have included that theory.


 Although the indictment may properly allege different ways of committing the
offense, the jury charge must conform to the evidence presented at trial. See Nickerson
v. State, 782 S.W.2d 887, 891 (Tex. Crim. App. 1990). 

 In this case, there was evidence that appellant raped T.W. vaginally. During
cross-examination by the State, T.W. testified that appellant put his "P" in her "P." 
Gregory, T.W.'s counselor, further testified that T.W. identified her vagina as "P"
during his interviews with her. He also testified that T.W. drew an object about 10
inches long and stated that white, sticky stuff come out of it and that, "[Appellant] put
this in me." We hold that this evidence supports the jury charge on vaginal rape.

 We overrule appellant's fourth point of error.

LEGAL AND FACTUAL SUFFICIENCY

 In his seventh and eighth points of error, appellant contends the evidence was
legally and factually insufficient to support the jury's verdict that appellant's sexual
organ penetrated T.W.'s sexual organ.

 In this case, the jury charge included two alternative theories. The charge read,
"If you find beyond a reasonable doubt . . . [appellant] . . . intentionally or knowingly
cause[d] the penetration of the female sexual organ or anus of [T.W.] . . . ." 
Appellant's sufficiency challenges concern only the vaginal penetration theory.
Appellant does not contend the evidence is legally or factually insufficient for the anal
penetration theory of aggravated sexual assault. Because we must uphold a verdict if
the evidence is sufficient to convict under any allegation submitted, and because the
verdict in non-capital criminal actions must be general, we overrule appellant's legal
and factual sufficiency challenges. See Henderson v. State, 77 S.W.3d 321, 327 (Tex.
App.--Fort Worth 2002, no pet.) (citing McDuff v. State, 939 S.W.2d 607, 613 (Tex.
Crim. App. 1997)); Renfro v. State, 827 S.W.2d 532, 536 (Tex. App.--Houston [1st
Dist.] 1992, pet. ref'd) ("The verdict in every criminal action must be general.").

 We overrule appellant's seventh and eighth points of error.

 We affirm the judgment.


 Elsa Alcala

 Justice


Panel consists of Justices Mirabal, Taft, and Alcala. 

Publish in part; do not publish. Tex. R. App. P. 47.

 
1. The State petitioned for review of the holding, by a panel of this Court, that the
trial court committed reversible error by refusing to permit appellant to
introduce two videotaped interviews of the complaining witness as evidence
of prior inconsistent statements. See Willover v. State, 38 S.W.3d 672, 676-77,
679. The Court of Criminal Appeals granted review and held that the trial
court did not abuse its discretion by refusing to admit the videotaped
interviews. See Willover v. State, 70 S.W.3d 841, 847.