ACCEPTED
01-14-00744-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
2/2/2015 10:45:39 AM
CHRISTOPHER PRINE
CLERK

Nos. 01-14-00744-CR and 01-14-00745-CR

In the
Court of Appeals for the First District of Texas
At Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
2/2/2015 10:45:39 AM
CHRISTOPHER A. PRINE
Clerk

Cause Nos. 1326112 and 1383738
In the 248th District Court
Of Harris County, Texas

---

ARTAVIOUS DEON HOLLINS
*Appellant*

v.

THE STATE OF TEXAS
*Appellee*

---

APPELLANT'S BRIEF

---

Casey Garrett
1214 Heights Boulevard
Houston, Texas 77008
(713) 228-3800
Texas Bar No. 00787197
Casey.garrett@sbcglobal.net


ORAL ARGUMENT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

Appellant: Artavious Deon Hollins

Counsel for Appellant at Trial:
> Mr. T. B. Todd Dupont, II
> Texas State Bar No. 24004289
> 3700 North Main Street
> Houston, Texas 77009
> 713-682-1800
> Mr. Mike Driver
> Texas Bar No. 24069634
> 402 Main, 4th Floor
> Houston, Texas 77002
> 713-417-4809

Counsel for Appellant on Appeal:
> Casey Garrett
> 1214 Heights Boulevard
> Houston, Texas  77008
> Texas Bar No. 00787197
> 713-228-3800

Counsel for the State at Trial:
> John Wakefield
> Assistant District Attorney
> Texas Bar No. 24054125
> 1201 Franklin Street, Suite 600
> Houston, Texas 77002
> 713-755-6881

Counsel for the State on Appeal:
> Harris County District Attorney's Office
> Appellate Division
> 1201 Franklin, Suite 600
> Houston, Texas  77002
> (713) 755-5800

Trial Judge:  The Honorable Katherine Cabaniss

## TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ................................................................... 2

TABLE OF CONTENTS.......................................................................................... 3

INDEX OF AUTHORITIES..................................................................................... 4

STATEMENT OF THE CASE................................................................................... 5

ISSUES PRESENTED............................................................................................. 6

The trial court abused its discretion by allowing the State to question the crime scene officer about whether or not mud on the apartment door was fresh or wet or dry over the defense objection to speculation.

The evidence presented at trial was legally insufficient to support a conviction for murder.

SUMMARY OF THE ARGUMENT ............................................................................ 7

APPELLANT'S FIRST POINT OF ERROR ............................................................... 10

APPELLANT'S SECOND POINT OF ERROR ........................................................... 14

PRAYER.............................................................................................................. 17

CERTIFICATE OF SERVICE .................................................................................. 19

## INDEX OF AUTHORITIES

**Cases**

*Bigby v. State*, 892 S.W.2d 864 (Tex. Crim. App. 1994) ..................................... 12

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) ................................... 15

*Cantu v. State*, 395 S.W.3d 202 (Tex. App.—Houston [1st Dist.] 2012) .............. 18

*Falrow v. State*, 943 S.W.2d 895 (Tex. Crim. App. 1997) .................................. 12

*Forest v. State*, 989 S.W.2d 365 (Tex. Crim. App. 1999) ................................... 18

*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) .......... 15

*Walters v. State*, 247 S.W.3d 204 (Tex. Crim. App. 2007) ................................. 11

*Willover v. State*, 70 S.W.3d 841 (Tex. Crim. App. 2002). ................................. 11

*Wise v. State*, 364 S.W.3d 900 (Tex. Crim. App. 2012) ................................ 15, 16

**Statutes**

Tex. Penal Code Ann. sec. 19.02 (b) (1) ............................................................... 15

Tex. Penal Code Ann. sec. 6.03(a) ....................................................................... 15

Tex. Penal Code Ann. sec. 6.03(b) ....................................................................... 16

**Rules**

Tex. R. Evid. 602 ................................................................................................ 12

STATEMENT OF THE CASE

Mr. Artavious Hollins was charged by indictment with the felony offense of murder (R.R.3 – 14). He was also indicted with the felony offense of tampering with evidence (R.R.3 – 14). Mr. Hollins pled not guilty to both of the charges and the cases were tried together before a jury (R.R.3 – 14). The jury found Mr. Hollins guilty of murder and guilty of tampering with evidence (C.R. 308). The jury assessed punishment at confinement for life in the Texas Department of Criminal Justice, Institutional Division, in the murder case. The jury assessed punishment at confinement for twenty-five years in the Texas Department of Criminal Justice, Institutional Division, in the tampering case. Mr. Hollins filed timely notice of appeal.

## ISSUES PRESENTED

The trial court abused its discretion by allowing the State to question the crime scene officer about whether or not mud on the apartment door was fresh or wet or dry over the defense objection to speculation.

The evidence presented at trial was legally insufficient to support a conviction for murder.

## SUMMARY OF THE ARGUMENT

The defense centered its case around Mr. Hollins' explanation that he was under attack by the other residents at the apartment complex on the day of the shooting. Part of Mr. Hollins' case concerned a footprint left on his front door. This evidence supported Mr. Hollins' claims that the complainant and his friends kicked in the apartment door, leaving Mr. Hollins in a situation where he had to act in self-defense. The prosecutor suggested the footprint was old and had been there for a long time, and the judge allowed the crime scene unit to testify that it was probably old, despite the fact that the crime scene officer was merely speculating and the defense properly objected.

Mr. Hollins testified at trial and provided the testimony of an eyewitness who confirmed his story that he acted in self-defense. Even if the jury disbelieved Mr. Hollins' testimony, however, and believed the facts as reported by Andre Lewis and Tranea Jones, the State failed to present legally sufficient evidence of murder.

## STATEMENT OF FACTS

Mr. Hollins and his girlfriend moved into an apartment complex on West 34th Street known as Casa Nube, and within a matter of days, one of the women living in the complex started arguing with him (R.R.4 – 196-204). At first, the

woman and Mr. Hollins merely exchanged some words back and forth, and Mr. Hollins tried to avoid any further escalation by going into his apartment and closing the door (R.R.3 – 140-143, 4 – 22-25, 204-215). At some point during this confrontation between Shae and Mr. Hollins, other residents got involved, including Tranea Jones and Andre Lewis. Andre Lewis appeared on the scene with a gun in his pocket, which he displayed to Mr. Hollins in a manner that was not immediately threatening but let Mr. Hollins know he was armed (R.R.4 – 27-30).

The woman who began the argument, however, known to her friends as Shae, was not satisfied. She called a man she knew to come to Casa Nube and confront Mr. Hollins. She referred to this man as "D." Shae and D yelled at Mr. Hollins through the door of his apartment (R.R.3 – 140-144, R.R.4 – 33-45). They threw rocks, boards, and perhaps something like a log at the doors and windows of Mr. Hollins' apartment. They were yelling and kicking his front door. Both Shae and D hoped to get Mr. Hollins outside so D could fight Mr. Hollins. Mr. Hollins stayed in his apartment and avoided any further conflict or interaction with D or Shae (R.R.3 – 140-150, R.R.4 – 33-45).

Approximately a week later, Shae started harassing Mr. Hollins again. She was bringing up the fight from the week before with other residents in the apartment complex (R.R.3 – 152-155). Shae spoke to Derrick Williams about what had happened between her and Mr. Hollins, but did not explain that she and D had already "taken care of it" by destroying Mr. Hollins' property and throwing bricks, boards, rocks and logs into his apartment. (R.R.3 – 155).

8

Derrick Williams became incensed by what Shae told him about Mr. Hollins and started across a small courtyard toward Mr. Hollins' apartment to fight him or confront him in some manner. Tranea Jones was watching the courtyard from her upstairs balcony and informed her roommate and partner, Andre Lewis, that Derrick Williams and Mr. Hollins were about to fight (R.R.3 – 155-160). Andre Lewis put on his shoes and ran downstairs. Derrick Williams and Andre Lewis were making comments and being aggressive toward Mr. Hollins, and at one point Derrick Williams told Mr. Hollins he was going to "whoop his behind." (R.R.3 – 152, 155-161). Mr. Hollins testified at trial that Derrick Williams and Andre Lewis told him he had to leave the apartment complex that night, and that both he and his wife were afraid to leave their belongings unattended because of the aggression toward him by the other residents.

Derrick Williams and Andre Lewis advanced toward Mr. Hollins' apartments. The witnesses told conflicting stories about how, exactly, it happened. Mr. Hollins testified he was in the bathroom when Derrick Williams and Andre Lewis came into his apartment unannounced and without warning. Tranea Jones testified that Mr. Hollins "invited" them into his apartment, but she clarified that he said it in a defensive way, telling them to "come on, then, come on in," and his tone was intended to say, "if you come in, basically I'm going to use that as self-defense," (R.R.3 – 159), indicating that Mr. Hollins felt threatened and was trying to retreat into his own home. Regardless of how it happened, all the witnesses agree that Derrick Williams went into Mr. Hollins' apartment. Andre Lewis

9

alternately claimed that he wasn't in the apartment or that he was; and he testified at trial that he saw Mr. Hollins pull a gun out of his back waistband. Mr. Hollins testified that Derrick Williams was carrying the gun. All the witnesses agreed that Mr. Hollins and Derrick Williams tussled over a gun and the gun "went off" and no one thought Mr. Hollins intended to shoot Derrick Williams.

## APPELLANT'S FIRST POINT OF ERROR

The trial court abused its discretion by allowing the State to question the crime scene officer about whether or not mud on the apartment door was fresh or wet or dry over the defense objection to speculation.

In considering a trial court's ruling on the admissibility of evidence, an appellate court must determine whether the trial court abused its discretion. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). An appellate court must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Id*. An appellate court must review the trial court's ruling in light of what was before the trial court at the time the ruling was made. *Id*. Overruling appellant's speculation objection in this case constitutes an abuse of discretion if the trial court's decision lies "outside the zone of reasonable disagreement." *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007).

Pursuant to Rule 602, a witness may not testify to a matter unless he or she has personal knowledge of the matter. *Bigby v. State*, 892 S.W.2d 864, 889 (Tex.

10

Crim. App. 1994); Tex. R. Evid. 602. "Personal knowledge will often come directly from the witness' senses…[or]…experience." *Falrow v. State*, 943 S.W.2d 895, 898 (Tex. Crim. App. 1997).

In the instant case, Mr. Hollins told the police and the jury that on the day of the shooting he was trying to avoid further conflict with his neighbors. He said he retreated into his own home. Mr. Hollins told the police and the jury that Andre Lewis and Derrick Williams either kicked in his door or forced the door open or otherwise came into his apartment without his permission. At trial, several explanations were given as to how the door was opened without evident damage to the frame or the doorknob or dead bolt (R.R.3 – 119-121). The State's own witness conceded that if the deadbolt was not locked and if the doorknob was not functioning properly, the door could be "kicked" open, or pushed open, without damage to the frame or the door (R.R.3 – 119-121).

Much of the State's case depended on the State's contention that Mr. Hollins invited Derrick Williams and Andre Lewis into his apartment with the apparent intention of talking about their differences. Mr. Hollins denied doing this and one of the State's star witnesses, Tranea Jones, testified that even if Mr. Hollins extended an "invitation" into his apartment, it was spoken in a tone of irony, intended to convey more of a dare, consistent with Mr. Hollins attempts to retreat from his neighbors (R.R..3 – 159).

The crime scene officer took photographs of Mr. Hollins' apartment door. One of the photos clearly shows a footprint on the door, also consistent with Mr.

11

Hollins' testimony that the men kicked his door open while he was in the bathroom. The prosecutor was at pains to explain this evidence, asking the responding crime scene officer about the photograph. The witness said that State's Exhibit 17 was a "photo of a dark spot which is actually a muddy shoe print on the door," (R.R.3 – 85). The prosecutor asked a lot of follow up questions about damage to the door and then asked, "Had that mud footprint been there for a while?" (R.R.3 – 88). The trial court sustained the objection. The prosecutor asked, "based on your expertise as a CSU officer who has made scenes of these kinds and investigated scenes of all kinds of crimes, in your knowledge if you have it based on training and experience, did you determine that this was old or not?" (R.R.3 – 88). Again, defense counsel objected to the question as speculation, but the trial court overruled the objection (R.R.3 – 88). The witness said, "it had been there long enough to dry which typically means number of hours [sic] if not days" (R.R.3 – 88). The officer also testified that the right shoe of the victim did not appear to be muddy (R.R.3 – 99).

The crime scene officer had no way to determine, either through science or experience or any other method available to mankind, whether or not the shoe print on the apartment door was new or old. Dusty shoes leave marks on doors as easily as muddy shoes. A footprint left on a door can be wet or dry, muddy or dusty, dark or light, and unless the print is obviously made up of crusted, hardened, clay-like mud, protruding from the surface of the door, no one can determine how old or new the print might be. The prosecutor attempted to cover

up the speculative nature of his question by suggesting the officer had some kind of expertise in mud, but such a suggestion was patently untenable. He asked, "based on your expertise as a CSU officer who has made scenes of these kinds and investigated scenes of all kinds of crimes," (R.R.3 – 88) implying that an officer who responds to a wide range of crimes might have special knowledge about the nature of the print. He asked, "based on training and experience, did you determine that this was old or not," (R.R.3 – 88) as if any police officers are trained or experienced in the question of how long it takes mud to dry, or whether or not a footprint on an apartment door was made out of dry, dusty dirt or mud that has subsequently dried. Common sense dictates that the officer was speculating and had no personal knowledge whatsoever about the nature or age of the print on the door, making the testimony inadmissible under Rule 602.

This evidence was particularly damaging for Mr. Hollins because it allowed the responding officer to say, in effect, that the police responders did not believe his version of events. It allowed the prosecutor to discount, in front of the jury, the evidence that clearly supported Mr. Hollins' statements, rather than allowing the jury to simply weigh the testimony and biases of all the witnesses involved. The question of whether or not Derrick Williams and Andre Lewis forced their way into Mr. Hollins' apartment was the heart of Mr. Hollins' defense.

The trial court abused its discretion when it allowed the crime scene officer to speculate about the age of the dirty footprint on Mr. Hollins' apartment door

and the error harmed Mr. Hollins. This court should reverse the conviction and remand for a new trial.

<u>APPELLANT'S SECOND POINT OF ERROR</u>

The evidence presented at trial was legally insufficient to support a conviction for murder.

In determining whether evidence is sufficient, a reviewing court views all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012), citing *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). When the record supports conflicting inferences, a reviewing court must presume that the fact finder resolved the conflicts in favor of the prosecution and defer to that determination. *Wise v. State*, 364 S.W.3d at 903 (quoting *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2788-89). The fact finder determines the weight and credibility of the evidence. *Id*.

Ordinarily, to sustain a conviction for murder the evidence must demonstrate that the person (1) intentionally or knowingly (2) caused the death of an individual. Tex. Penal Code Ann. sec. 19.02 (b) (1). A person acts "intentionally" or with intent with respect to the nature of his conduct or to a result of his conduct when it is "his conscious objective or desire to engage in the conduct or cause the result." Tex. Penal Code Ann. sec. 6.03(a); *Wise*, 364 S.W.3d

14

at 903. A person acts knowingly or with knowledge of the nature of his conduct or circumstances "when he is aware of the nature of his conduct or that the circumstances exist." Tex. Penal Code Ann. sec. 6.03(b).

In the instant case, all the witnesses agreed, both the witnesses for the State and the ones for the defense, that Shae instigated a conflict between Mr. Hollins and Derrick Williams and Mr. Hollins repeatedly retreated into his apartment from this conflict. Tranea Jones and Andre Lewis both testified that Mr. Hollins initially got into a verbal argument with Shae, but he consistently retreated into his apartment any time the argument escalated or any time it looked like someone was trying to take it to the next level. All the witnesses agree that Shae called D over to the complex to harass  Mr. Hollins and damage his apartment, and everyone agreed Shae and D threw rocks, sticks and other items at the doors and windows of the apartment, taunting him to come out. Lewis, Jones and Mr. Hollins all testified that Mr. Hollins stayed securely inside his apartment on that occasion.

On the day of the shooting, likewise all the witnesses' agree that Mr. Hollins did not start or cause any arguments and that Shae, Williams and Lewis were being aggressive toward Mr. Hollins. Mr. Lewis testified that every time Mr. Hollins would begin to come out toward the courtyard and the other residents began escalating the fight or walking toward him, he would immediately retreat back into his home. Tranea Jones testified that Derrick Williams threatened to "whoop his behind," and Mr. Hollins continued to retreat until eventually he began saying things like, "well, come on, come on then," and eventually said, "come into

15

my house." Tranea Jones referred to this statement as an "invitation," but her testimony made clear that she understood it to be in the nature of a dare, more of a way to call the bluff of Derrick Williams and Andre Lewis by daring them to follow Mr. Hollins into his own home. In fact, Tranea got Andre Lewis involved because she could tell that Derrick Williams was pursuing the conflict and heading toward Mr. Hollins' apartment.

All the witnesses testified that there was a struggle for a gun inside Mr. Hollins' apartment. Tranea Jones testified, "I was already around there because when Artavious realized that he had shot Derrick – because I don't think Artavious knew he shot Derrick until he seen Derrick when Derrick said, "it didn't have to go like this." (R.R.3 – 167). Mr. Hollins also testified he didn't know if anyone was hurt when he ran away from the scene. He knew the gun had gone off, and he knew Derrick Williams had fallen somewhere outside of his apartment, but he was not aware that Derrick Williams had been shot.

Despite the inconsistencies in testimony, the witnesses at trial made several things clear: 1) Mr. Hollins was not the aggressor in any of the incidents at Casa Nube Apartments; 2) Mr. Hollins repeatedly declined to fight with the neighbors who were trying to instigate a conflict and instead retreated into his home; 3) Derrick Williams and Andre Lewis went into his home in the midst of a yelling match when at least one other resident believed a fight was about to start; and 4) Mr. Hollins did not intend to shoot or even know he'd shot Derrick Williams after the tussle in his apartment.

16

Firing a gun in the direction of an individual is an act clearly dangerous to human life within the meaning of the murder statute. ***Forest v. State***, 989 S.W.2d 365, 368 (Tex. Crim. App. 1999). Struggling for control of a gun, however, when two aggressors have followed you into your own apartment after days of verbal harassment and property damage, is not an act clearly dangerous to human life. In ***Cantu v. State***, 395 S.W.3d 202 (Tex. App.—Houston [1st Dist.] 2012), this Court rejected the defendant's claims that the gun was accidentally discharged while he tried to take it from the defendant. In that case, however, expert testimony showed that the defendant had staged the evidence. In the instant case, by contrast, even the State's own witnesses believed the gun accidentally discharged, and all the witnesses agreed that the complainant and Mr. Hollins struggled for control of the gun.

The facts presented by the State do not support a conviction for murder and no rational trier of fact could have found the elements of the charged offense based on the record evidence. This court should reverse the conviction and acquit Mr. Hollins.

PRAYER

Appellant respectfully prays this Honorable Court to reverse the conviction and acquit Mr. Hollins. Alternatively, appellant respectfully prays this Honorable Court to reverse the conviction and remand the case to the trial court for a new trial.

Respectfully submitted,


____/s/Casey Garrett____
Casey Garrett
1214 Heights Boulevard
Houston, Texas  77008
(713) 228-3800
Texas Bar No. 00787197
Casey.garrett@sbcglobal.net

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument has been provided

to the District Attorney's Office electronically.


        ____/s/Casey Garrett____
        Casey Garrett
        1214 Heights Boulevard
        Houston, Texas  77008
        (713) 228-3800
        Texas Bar No. 00787197
        Casey.garrett@sbcglobal.net