In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00037-CV


______________________________




JEFFREY L. BELL, Appellant



V.



CITIBANK (SOUTH DAKOTA) N. A., Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 05C1557-202




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Jeffrey L. Bell, proceeding pro se, (1) appeals the granting of Citibank's (South Dakota) motion
for summary judgment for collection on a delinquent credit card debt. When Bell fell behind on his
payments, Citibank sued to collect the unpaid credit card debt. Although Bell filed an answer, (2) Bell
did not respond to Citibank's motion for summary judgment. The trial court granted Citibank's
traditional motion for summary judgment awarding $4,010.13 to Citibank, as well as $1,500.00 in
attorney's fees. The trial court also awarded conditional attorney's fees of $1,500.00 in the event of
an appeal to the court of appeals, and $2,500.00 in the event a petition for review is filed with the
Texas Supreme Court. 

 Bell appeals the trial court's decision, raising two points of error. According to Bell, the trial
court erred in granting the motion for summary judgment because Bell had not received notice of
the motion for summary judgment twenty-one days in advance of the hearing on the motion. In
addition, Bell argues the trial court's award of attorney's fees is "punitive and excessive." Because
Bell received sufficient notice and there is sufficient evidence to support the trial court's award of
attorney's fees, we affirm the judgment of the trial court.

 The standard of review for traditional summary judgment motions is well established. When
reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge
every reasonable inference and resolve any doubts in the nonmovant's favor. Limestone Prods.
Distribution, Inc. v. McNamara, 71 S.W.3d 308, 311 (Tex. 2002); Rhone-Poulenc, Inc. v. Steel, 997
S.W.2d 217, 223 (Tex. 1999). Summary judgment is proper when the movant establishes that there
is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Tex.
R. Civ. P. 166a(c); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671 (Tex. 1979);
Baubles & Beads v. Louis Vuitton, S.A., 766 S.W.2d 377 (Tex. App.--Texarkana 1989, no writ). 

 A. The Record Shows Bell Received Sufficient Notice

 In his first point of error, Bell alleges he did not receive the required notice of the motion for
summary judgment. Rule 166a(c) provides that a motion for summary judgment and any supporting
affidavits "shall be filed and served at least twenty-one days before the time specified for hearing." 
Tex. R. Civ. P. 166a(c). However, Bell failed to preserve this issue for our review and, even if the
issue had been preserved, the record contains prima facie evidence that Bell was served more than
twenty-four days before the hearing. (3)

 In order to preserve error on a claim of deficient notice, Bell was required to "file a motion
for continuance or raise the complaint of late notice in writing, supported by affidavit evidence, and
raise the issue before the trial court during the summary judgment hearing." Nguyen v. Short, How,
Frels & Heitz, P.C., 108 S.W.3d 558, 560 (Tex. App.--Dallas 2003, pet. denied); see Negrini v.
Beale, 822 S.W.2d 822, 823 (Tex. App.--Houston [14th Dist.] 1992, no writ); Veal v. Veterans Life
Ins. Co., 767 S.W.2d 892, 895 (Tex. App.--Texarkana 1989, no writ) (twenty-one-day notice
requirement may be waived if nonmovant receives notice, appears at hearing, and does not file
affidavit under Rule 166a(f)). Bell concedes, on appeal, that he appeared at the hearing on the
motion for summary judgment. (4) Because the appellate record contains no evidence that Bell filed
a motion for continuance or filed an affidavit in support of his allegation of deficient notice, the
error, if any, is not preserved for our review.

 Even if the issue had been preserved, the record contains prima facie evidence Bell received
the required notice. Citibank's motion for summary judgment includes a certificate of service signed
by Allen L. Adkins, Citibank's attorney at trial, which was dated January 26, 2006. The certificate
of service states the motion was mailed to Bell by certified mail January 26, 2006. Rule 21a of the
Texas Rules of Civil Procedure provides, "[s]ervice by mail shall be complete upon deposit of the
paper . . . in a post office or official depository under the care and custody of the United States Postal
Service." Tex. R. Civ. P. 21a. Further, the certificate of service constitutes prima facie evidence that
notice was placed in the mail January 26, 2006. See Tex. R. Civ. P. 21a; Alvarez v. Thomas, 172
S.W.3d 298, 303 (Tex. App.--Texarkana 2005, no pet.). All notices were mailed to Bell at his home
address as shown in the docketing statement Bell filed in this Court. There is no evidence
controverting the certificate of service. (5)

 In his reply brief, Bell cites Martin v. Martin, Martin & Richards, Inc., 989 S.W.2d 357, 359
(Tex. 1998), as authority for his argument he did not receive adequate notice. In Martin, the trial
court ruled on the motion for summary judgment four days after it had been filed and without
providing notice to the nonmovant. Id. The nonmovant filed a response two days after the trial
court's ruling, which the trial court also overruled eleven days later. Id. The Texas Supreme Court
held the failure to give notice of the submission date for a motion for summary judgment constituted
error, but it found the error was harmless because the trial court considered the nonmovant's response
and reconfirmed its ruling. Id. Martin is clearly distinguishable from the current case. In the current
case, there is prima facie evidence Bell received notice, there is no evidence controverting the prima
facie evidence, and the trial court did not rule on the motion for summary judgment until thirty-nine
days after the service of notice. Because there is prima facie evidence Bell received notice
January 26, 2006, Bell received sufficient notice for a hearing to be held March 6, 2006. We
overrule Bell's first point of error.

 B. There is Sufficient Evidence to Support the Award of Attorney's Fees

 In addition, Bell argues the award of $1,500.00 in attorney's fees was punitive, excessive, and
amounts to unjust enrichment. (6) We have construed Bell's argument as a challenge to the sufficiency
of the evidence of attorney's fees. 

 An affidavit by Citibank's attorney provides summary judgment evidence as to attorney's fees
and expenses. The attachment sets out fees and expenses as $1,500.00 for services rendered through
trial, $1,500.00 conditional fees for an appeal to the court of appeals, and $2,500.00 conditional fees
in the event a petition for review is filed with the Texas Supreme Court. The affidavit further
provides, "taking into consideration the usual and customary attorneys' fees in this county, the
amount in controversy, the legal questions involved, the fee arrangement with the client, the benefits
conferred, and the time required," that these fees were "reasonable and necessary." The record before
this Court contains no evidence this affidavit was controverted. We conclude the affidavit
constitutes legally and factually sufficient evidence to support the award for attorney's fees and
expenses for pursuing Citibank's claim.

 Further, as previously noted, Bell did not file any written response to the motion for summary
judgment. "Issues not expressly presented to the trial court by written motion, answer, or other
response shall not be considered on appeal as grounds for reversal." Tex. R. Civ. P. 166a(c). We
overrule Bell's second point of error. 

 For the reasons stated, we affirm the judgment of the trial court.




 Jack Carter

 Justice


Date Submitted: October 20, 2006

Date Decided: November 2, 2006

1. Bell represented himself at trial as well. The law is well settled that "[a] party proceeding
pro se must comply with all applicable procedural rules" and is held to the same standards as a
licensed attorney. Weaver v. E-Z Mart Stores, 942 S.W.2d 167, 169 (Tex. App.--Texarkana 1997,
no pet.).
2. Although Bell's plea was not in the standard form of an answer, it nevertheless gave the
court a response acknowledging receipt and acceptance of Citibank's citation and petition. See In re
K.B.A., 145 S.W.3d 685, 691 (Tex. App.--Fort Worth 2004, no pet.). Bell's filing constituted an
appearance in the matter and entitled him to notice of further proceedings in the case. See Smith v.
Lippmann, 826 S.W.2d 137, 138 (Tex. 1992); see also Hughes v. Habitat Apartments, 860 S.W.2d
872, 873 (Tex. 1993). Bell did not respond to the requests for admissions served on him with the
petition and citation.
3. We note Rule 21a extends the period by three days when service occurs by mail. See Tex.
R. Civ. P. 21a; Wheeler v. Green, 157 S.W.3d 439, 441 (Tex. 2005). 
4. In his reply brief, Bell concedes he received notice of the March 6, 2006, hearing, but alleges
he was not aware of the motion for summary judgment. The record contains a letter from Citibank's
attorney notifying Bell of the March 6, 2006, hearing with an attached copy of the order setting the
hearing. The order contains a certificate of service signed by Allen Adkins, attorney for Citibank,
that states Bell was served by regular and certified mail February 7, 2006. 
5. We note Bell alleges in his brief, as well as in his reply brief, that he was never notified of
a motion for summary judgment and Citibank's attorney did not send him "any letter or notice by
mail at any time whatsoever." These allegations do not constitute evidence.
6. We note Bell contends this amount is "more than $1,000.00 greater than what defendant
originally agreed to pay" and alleges "Mr. Adkins' Office assured me that he would only charge
$461.17 in legal fees." In his reply brief, Bell alleges "[a] legal secretary representing Mr. Allen's
[sic] Office advised Bell that, if Bell would agree to the default judgment against him of the full
amount, then Mr. Adkins would reduce his legal fees of $922.23 to half, or $461.17." In addition,
Bell attached a letter to his reply brief, which appears to accept this "offer." This letter was also filed
with the district court. We are bound by the record on appeal, and the appellate record does not
contain evidence of a settlement agreement.


cluding the testimony of his fourteen-year-old son, D.W., because of D.W.'s erroneous invocation of his Fifth Amendment
privilege. The record shows that James sought to question D.W. about sexual activity
between D.W. and L.C. during the time period when D.W. was living in Waskom with
James and James' wife (D.W.'s stepmother), which D.W. defined as the time period
including his fifth-grade year in school. D.W. stated that, at the time of trial, he was
fourteen, and in the sixth grade, which would place him at twelve to thirteen years of age
while he lived with James and James' wife in Waskom. The argument raised on appeal
is that D.W. could not have legally claimed a Fifth Amendment privilege against self-incrimination because, at the time of the alleged sexual activity, D.W. was, according to
James' testimony, only nine years old, and thus not subject to prosecution under either the
penal or juvenile codes.


 At the time the testimony was disallowed, the only information
before the court was D.W.'s testimony that the allegations were of activity during a time
frame which would have placed him in jeopardy of criminal prosecution as a juvenile. 
Under those facts, we cannot say D.W. (pursuant to his attorney's advice) was unable to
afford himself of the right to avoid self-incrimination. No error has been shown. 
          James next contends the court erred by excluding testimony about L.C.'s prior
sexual activity. James complains because he was not permitted to testify that L.C. had told
him she had sex with D.W. when they were eight and nine years old, respectively. The
court excluded the testimony as hearsay. 
          We review the trial court's decision to admit or exclude evidence under an abuse
of discretion standard. Green v. State, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996); 
Montgomery v. State, 810 S.W.2d 372, 379–80 (Tex. Crim. App. 1990). We will not
reverse a ruling that is within the "zone of reasonable disagreement." Green, 934 S.W.2d
at 102; Montgomery, 810 S.W.2d at 391 (op. on reh'g); Broderick v. State, 35 S.W.3d 67,
75 (Tex. App.—Texarkana 2000, pet. ref'd).
          James contends on appeal the evidence was admissible because L.C. had informed
the nurse that L.C. had been involved in no other sexual activity (and the nurse so testified)
and the evidence of L.C.'s denial of other sexual partners had thus been placed before the
jury, thus making impeachment evidence admissible. James also suggests the evidence
should be admissible because it provides an alternative explanation for the medical
evidence of healed tears to L.C.'s hymen. 
          The State objected based on its position that the testimony was inadmissible
because it was hearsay, because there was no confirmation, and because the evidence
was of past sexual behavior and would be in violation of Tex. R. Evid. 412. The trial court
concluded it was hearsay. The court went on to state that this case was unlike the cases
the parties had previously provided for the court's review in which there was evidence
before the jury that "she [the victim] had said it in the medical records." The court then
excluded the testimony. 
          We first recognize that, if the court was suggesting there was no evidence in the
medical records about L.C.'s claim not to have engaged in other sexual behavior, that is
incorrect. We also note that the State's suggestion to the trial court that independent
confirmation is required has no support in the rules or in caselaw. 
          The State argues we should overrule the contention of error because the reasons
to admit the evidence that are raised in this appeal were not brought before the trial court
for its consideration. That argument is based on the principle that, while a court of appeals
can affirm a trial court's decision on a legal theory not presented to the trial court without
violating "ordinary notions of procedural default" (see State v. Mercado, 972 S.W.2d 75,
77–78 (Tex. Crim. App. 1998)), it does violate those notions for a court of appeals to
reverse a trial court's decision on a legal theory not presented to the trial court by the
complaining party.


 Hailey, 87 S.W.3d at 121–22.
          As applied to this case, it is apparent that the question of whether the proposed
testimony was hearsay was before the trial court, that the issue of whether it should be
excluded under Rule 412 was generally before the court, and that the question of whether
it was admissible because the issue had already been broached through medical records
was before the court. There was virtually no discussion of any of those topics at the cited
point in the record where the court heard the testimony outside the presence of the jury,
and we have been directed to no other location in the record where any other discussion
of those matters took place. 
          It is clear that the evidence is hearsay and that it was offered as proof of the matter
asserted. See Tex. R. Evid. 801. However, at trial, there was no argument made to the
court that the evidence was admissible for impeachment purposes. To have evidence
admitted under a hearsay exception, the proponent of the evidence must specify the
exception on which the proponent is relying. Willover v. State, 70 S.W.3d 841, 845 (Tex.
Crim. App. 2002). No one at trial disputed that the videotapes were hearsay. Thus, it was
up to James, not the trial court, to specify the exception to the hearsay rule on which he
was relying or to specify how the evidence was not hearsay. See id. at 845–46. 
          Similarly, Tex. R. Evid. 412 has multiple subdivisions that can be argued in different
situations to provide an exception that allows admission of evidence of specific instances
of an alleged victim's past sexual behavior. There is no specificity in connection with the
discussion of this rule, and no argument that would serve to direct the trial court to anything
other than the rule in general as a reason to admit the testimony. It is arguable that the
court's acknowledgment of the medical testimony aspect suggests the court was focusing
on this area in its review, but even if we likewise assume the focus was on that area, the
court clearly stated it did not believe that the probative value of this hearsay, elicited from
the accused, would outweigh the danger of unfair prejudice in this instance. Under the
standard we are required to apply in reviewing the admission of evidence, we do not find
this to be so far outside the zone of reasonable disagreement as to constitute error. The
contention of error is overruled.
          James next contends the conviction should be reversed because he received
ineffective assistance of counsel at trial. In this review, we use the standards as set out
in Strickland v. Washington, 466 U.S. 668 (1984). To prevail, James must prove by a
preponderance of the evidence (1) that his counsel's representation fell below an objective
standard of reasonableness and (2) that the deficient performance prejudiced his defense. 
Id. at 688; Rosales v. State, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). To meet this
burden, James must prove that his attorney's representation fell below the standard of
prevailing professional norms and that there is a reasonable probability that, but for his
attorney's deficiency, the result of the trial would have been different. Tong v. State, 25
S.W.3d 707, 712 (Tex. Crim. App. 2000). Under this standard, a claimant must prove that
counsel's representation so undermined the proper functioning of the adversarial process
that the trial cannot be relied on as having produced a just result. Strickland, 466 U.S. at
686. 
          As far as strategic or tactical reasons for counsel's action or inaction, in the absence
of direct evidence of counsel's reasons for the challenged conduct, we must assume a
strategic motivation if any can be imagined. Garcia v. State, 57 S.W.3d 436, 440 (Tex.
Crim. App. 2001). 
          James contends counsel was ineffective in several respects. James first contends
counsel was ineffective because he did not object to the admission of the videotaped
interview of L.C. James also complains his counsel did not object to the admission of 
multiple "outcry" statements made to a number of other individuals.
          In the videotaped interview, L.C. explained what she claimed James had done and
the time frame. She was questioned about the living arrangements and when various
family members were present. She testified similarly at the trial and was cross-examined
at some length about how—because she shared a bedroom and a bed with two
brothers—it would be possible for the assaults to occur over a hundred times while her
brothers were asleep next to her. At that point, L.C. shifted her story to state she was
moved to the floor when the assaults happened at night. She also testified that the
bedroom window opened to a breezeway, that her brothers had broken the blinds on that
window, and that people walking by could see inside the bedroom. She also testified Child
Protective Services (CPS) had been to their home at least twenty times during the previous
six years and had questioned her each time. She admitted she never said anything to
them about sexual activity with her stepfather. 
          The complained-of witnesses all testified about variations of L.C.'s first statements
to them about James' sexual assaults. Although categorized as outcry witnesses by
counsel due to the nature of their testimony, the State did not offer their testimony as an
outcry, but simply called them as witnesses. There was evidence at trial that L.C. told her
mother, Kimberly James, first, and then told her great-grandmother Fannie Miles, both of
whom testified at trial. Melita Haynes testified L.C. came to her and told her about James
"messing with her." 
          Rex Hawsey, the Waskom Chief of Police, testified that he had investigated the
complaint and that L.C. had identified the perpetrator as James. He also testified L.C. told
him the assaults had begun with oral sex and progressed to intercourse, always early in
the morning and always in the bedroom. Hawsey also testified that, when he talked to
Kimberly, she told him she believed that L.C. was not telling the truth because "she lies all
the time." 
          Kay Carroll, the nurse who conducted the rape examination on L.C., testified about
the description of the assaults related to her by L.C. 
          Margie Bell, the instructional coordinator for Waskom Independent School District,
testified that L.C. had come to her, along with Melita Haynes, and told her that James had
sexually abused her. 
          Christy Green, a CPS representative, testified about the nine investigations
preceding the one that began because of these allegations of sexual abuse. 
          James also complains that trial counsel should have objected to the outcry
statements recounted by L.C.'s mother, because he was not provided with notice of her
testimony and a summary of that evidence as required by Tex. Code Crim. Proc. Ann. art.
38.072, § 2(b) (Vernon 2005). 
          There was testimony from two other individuals that L.C. was a chronic liar and had
stolen from homes and shoplifted from businesses, and that she was simply not to be
believed. There was also a mismatch between some of the descriptions L.C. had provided
to some of the witnesses and her testimony at trial, specifically whether the incidents
occurred only in the mornings, or both in the evenings and mornings, and whether they all
occurred on the bed or on the floor, and some doubt was thrown on the timing of the
assaults based on the time she went to school in the morning for breakfast and then took
a bus transfer to the middle school. 
          It is possible that counsel chose to let a number of people testify about the stories
they were told by L.C. in an attempt to strengthen James' defensive argument that L.C.
was a liar and to show how her story altered as time passed. As a strategic choice by trial
counsel, we are not permitted to second-guess that choice. 
          We also recognize that the videotaped interview could not have been properly
admitted under the statute had a proper objection been made. See Tex. Code Crim. Proc.
Ann. art. 38.071 (Vernon 2005); Edwards v. State, 107 S.W.3d 107, 110–11 (Tex.
App.—Texarkana 2003, pet. ref'd). However, the same reasoning set out above could also
apply to the decision to not object to the videotape in this case—to show on tape how the
story had altered somewhat as time went on. Although we are not convinced it was
necessarily the right choice, it is not apparent from this record that it was such an
unreasonable choice as to allow us to determine that it constituted ineffective assistance
of counsel.



          James next contends counsel was ineffective because he allowed the State to
introduce evidence bolstering its unimpeached witness—L.C. James points to the
testimony of the various witnesses discussed above and argues that to allow them to all
testify that L.C. had told them about the sexual activities constituted bolstering and was
thus objectionable. See Morales v. State, 2 S.W.3d 487, 488 (Tex. App.—Texarkana
1999, pet. ref'd) (discussing concept of bolstering and holding that prosecution cannot
bolster its witnesses unless they have been impeached on cross-examination, and also
recognizing that bolstering occurs when testimony's sole purpose is to enhance credibility
of another witness, without adding anything to proof of a relevant fact); Cohn v. State, 849
S.W.2d 817 (Tex. Crim. App. 1993).
          L.C. was, however, impeached in this case. There was testimony she was a liar and
a thief, and as pointed out above, her story was not entirely consistent as told to different
people. Arguably, that provides both that the evidence was not objectionable on that basis
and that there was a tactical purpose for allowing its admission. 
          As pointed out by counsel, one of the witnesses, the child's mother, testified about
the credibility of the child before the child testified and before any impeachment of the
child. She was asked by the State if she believed the story her child had told her, and she
said that she did. The State argues that no error is shown because defense counsel
vigorously cross-examined her about her testimony. That will go to a harm analysis, but
does not alter the fact that the mother's testimony was indeed nothing more than bolstering
of her child's believability, without providing any additional facts for the jury. 
          The question remains as to whether the failure to object was intentional. On cross-examination, counsel elicited testimony from the mother that L.C. lied more than her four
other children, that L.C. had been caught shoplifting and was involved in other thefts, and
that she (the mother) had told the police that L.C. lied "about all of this." There is,
therefore, at least the possibility of a tactical reason for not objecting to the testimony. 
Ineffective assistance has not been shown. 
          James also contends counsel was ineffective because he did not object to testimony
about the nine prior CPS referrals and investigations. That same testimony, however, was
used to show the many years L.C. was asked to tell the CPS workers about any sexual
misconduct by anyone in the household, and that she had, each time, denied that any such
assault had occurred. 
          James also complains because his trial counsel did not object to proof that L.C.'s
mother and James were both users of cocaine. L.C.'s mother was a witness for the State. 
She testified that neither she nor James was working, but drank a twelve-pack of beer each
day and smoked crack cocaine. So far as drug use by the mother goes, this evidence
would cast considerable doubt on her credibility as a witness. However, this would clearly
be an objectionable extraneous bad act on the part of James. It is possible counsel did not
object to this testimony because he thought the value of this evidence as an attack on the
credibility of a witness for the State was greater than the harm it reflected on James. In
the absence of direct evidence of counsel's reasons for not objecting, there is an "imagined
strategic motivation."
          James also complains because counsel did not object to the admission of an exhibit
consisting of a page from L.C.'s medical records entitled "Instructions for . . . [L.C.]." These
instructions explain the type of examination L.C. received and the results that might be
revealed by the examination, including a diagnosis of syphilis or AIDS. The exhibit also
contains two paragraphs describing the psychological trauma of rape, explaining that it is
not L.C.'s fault for being sexually assaulted, and suggesting what might be done to help
her recover. We agree that the probative value of most of the content of this exhibit at the
guilt/innocence phase of the trial is questionable. However, it is not specifically directed
at James and, absent an explanation by counsel, we cannot say counsel's failure to object
constituted ineffective assistance. 
          James also contends counsel was ineffective because he did not recall L.C. to
testify about performing oral sex on another child. L.C. had testified outside the presence
of the jury that she performed oral sex on one of her stepbrothers. However, she also
testified that "[h]e asked me to do the same thing my step dad [sic] did." It would be
reasonable for counsel to decide not to recall her to provide this testimony, which could be
heard by the jury as evidence that James did the same thing.
          James finally contends counsel was ineffective because he did not object to a
statement in the court's charge that "penetration is complete however slight." There are
cases holding that this language is a proper instruction that may be used in such a charge,
so long as it does not advise the jury that penetration occurred or that the appellant had
done so at any time. See Wilson v. State, 905 S.W.2d 46, 48 (Tex. App.—Corpus Christi
1995, no pet.). Under these circumstances, we do not find that counsel was ineffective in
failing to object. 
          The contentions of ineffective assistance of counsel are overruled.
          We affirm the judgment.


                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      August 8, 2005
Date Decided:         September 29, 2005

Do Not Publish