Affirmed and Memorandum Opinion filed August 7, 2007








Affirmed and Memorandum Opinion filed August 7, 2007.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00757-CR

____________

 

DELMY MARGOTH RUIZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 209th
District Court

Harris County, Texas

Trial Court Cause No. 1005593

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Delmy Margoth Ruiz, appeals from her conviction
for aggravated assault.  A jury convicted her and assessed punishment at eight
years in prison and a $10,000 fine.  In a single issue, appellant contends that
the trial court erred in excluding certain evidence.  We affirm.

I.  Background








Appellant admits that on October 28, 2004, she used a knife
to sever the penis of complainant, Rene Nunez.  The sequence of events on that
date and the nature of the relationship between the parties were hotly
contested at trial.  Appellant contended that Nunez had physically and
emotionally abused her in the past and that he was in the process of sexually
assaulting her when she severed his penis.  Nunez claimed that appellant was
the controlling party in the relationship and that she assaulted him on October
28 out of jealousy, after he had fallen asleep.

In their respective testimonies, appellant and Nunez agreed
that they met in their native El Salvador, and that appellant, who was already
a United States citizen, helped Nunez come to the United States.  They began a
sexual relationship and eventually bought a house together.  They further
agreed that Nunez was twice arrested and twice pleaded guilty to assaulting
appellant.  He testified at trial, however, that appellant was the aggressor on
those two occasions and that she called the police after he left.  He said that
he pleaded guilty because he was desperate, alone, and was assured probation if
he confessed.  He admitted that he had grabbed her hand to defend himself and
that he had once Akicked her out of the car.@  After the first
assault conviction, one of the terms of Nunez=s probation was
that he avoid all contact with appellant.  He says that she called him and
convinced him to return to the house.  After the second conviction, Nunez was
again ordered to avoid all contact with appellant.  He testified that on the
occasion of the attack, she had asked him to come to the house to sign some
papers transferring ownership of the house.  He sat on the bed and fell asleep
while waiting for her to get the documents.  The next thing that he remembers
is feeling Asomething hot@ in the area of his
genitals; he then passed out and did not remember anything else until he was in
the hospital.  He denied ever raping or assaulting appellant.








Appellant testified that at some point during their
relationship, Nunez began to drink heavily; he would sometimes grab her and
push her against the wall and twist her hand around.  She said that by 2004,
Nunez was Abeginning to torture [her] with the things [she] loved
the most.@[1]  Appellant stated
that she did not break up with Nunez in 2004 because he had made so many
threats, specifically that if she Ahad him sent to
jail again, he was going to do something very big and very well done and he was
going to return to El Salvador.@

She said that she reported him to the police because he hit
her and abused her.  Specifically, she said that he grabbed her by the arms and
shook her, hit her on the head and the hands, hit her with a telephone, pulled
her by her hair, pushed her down, and struck her shoulder blade.  After he was
released from jail, he returned to the house and started to hit her again.  He
would grab her by the throat and hit her on the head.  She said he would
frequently show up drunk at the house, she would cook for him, and then they
would go into the bedroom where Athe worst would
start.@  She said she put
up with his presence at the house out of fear.  For a year, according to
appellant, Nunez violated probation by abusing, threatening, and terrorizing
her.  She said that at one point, Nunez made her drink his urine, and that on
another occasion, he threw a snake on her when he knew she was afraid of
snakes.

Appellant stated that on the morning of October 28, 2004,
Nunez violently removed all of her clothes, tied her wrists, and raped her.  He
then began to force her to perform oral sex.  He told her that if she did not
do it, he would Ayank off a piece of [her] lip.@  He also
threatened to Aleave this knife you know where.@  She told him
that if he would untie her, she would do it.  She felt that severing his penis
was the only way to prevent his continuing the sexual assault.  She was
depressed and the sexual assault was Athe last straw.@  The knife was on
a table close by the bed, and Nunez was awake when she injured him.  Appellant
acknowledged that she never discussed the rape with her sister or daughter (who
were both at the house at the time of the alleged assault).  She further
admitted that her trial testimony was Anew in many
respects.@








Maria Coreas, appellant=s sister,
testified that she was living at appellant=s house at the
time of the alleged assault.  Coreas initially stated that she saw Nunez hit
appellant at times.  She then admitted, however, that she had given the police
a sworn statement in which she denied having seen either appellant or Nunez
strike the other.  She then stated that she had never seen or heard them hit
each other, but she also said that Nunez was mean to appellant because he didn=t want her talking
to her daughters, and he yelled at appellant about her dogs.

Jenny Ruiz, appellant=s daughter,
testified that she also was living at appellant=s house on October
28, 2004.  She stated that while both appellant and Nunez were mean to each
other, Nunez was meaner, took advantage of appellant, and didn=t want appellant
to have friends, animals, or a relationship with her daughters.  Appellant was
trying to keep Nunez out of the house, but the only way to stop him from coming
to the house would have been to tell his probation officer.  Although Jenny
heard appellant say that Nunez Amade her do it,@ appellant did not
explain her meaning.

Deputy Joe Leal testified that appellant mentioned past
beatings by her husband (apparently referring to Nunez).  She told him that she
went to the kitchen to get the knife used to injure Nunez.  She said nothing
about having been assaulted or raped by Nunez on the date in question. 
Detective Barbara Bates testified that she interviewed Nunez on two occasions,
he appeared to love appellant, and he seemed more like a victim than an
abuser.  Tina Ansari, an assistant district attorney, testified that appellant
told her about the prior assaults by Nunez underlying his two convictions. 
Ansari believed that the assaults indeed had occurred.

II.  Unadmitted Evidence








On appeal, appellant contends that the trial court erred in
excluding certain evidence.  The evidence appellant identifies as excluded
includes testimony from Jenny Ruiz that (1) she was afraid of Nunez because she
believed that he had caused her grandfather=s death in El
Salvador, (2) she believed that appellant and Coreas were also afraid of Nunez,
(3) Nunez was always threatening people, (4) Nunez threatened to kill her
husband, (5) Nunez hit her once while she was defending appellant, (6) Nunez
threatened appellant with physical harm, including death, and (7) she saw Nunez
hit and kick appellant.  Appellant additionally complains that the trial court
excluded the testimony of Coreas to the effect that she, too, feared Nunez
because she believed that he or his family had killed her father in El
Salvador.  Appellant further complains that she herself was not permitted to
testify regarding (1) specific acts Nunez committed to frighten, intimidate, or
hurt her, (2) threats Nunez made in the one and a half years prior to the
alleged assault, and (3) deviant sexual practices Nunez forced upon her. 
Lastly, appellant complains that she was not permitted to ask Detective Bates
why appellant=s family would have feared Nunez.

III.  Standards of Review

We review a trial court=s order excluding
evidence under an abuse of discretion standard.  Willover v. State, 70
S.W.3d 841, 845 (Tex. Crim. App. 2002).  In order to successfully argue on
appeal that the trial court erred in excluding certain evidence, an appellant
must demonstrate that (1) he or she preserved the argument by offering the
evidence during trial and by making the trial court aware of the substance of
the evidence and the basis for its admission, see Tex. R. App. P. 33.1, Tex. R. Evid. 103(a)(2), Basham v.
State, 608 S.W.2d 677, 679 (Tex. Crim. App. 1980); (2) the trial court
erred in ruling the evidence inadmissible, see Willover, 70 S.W.3d at
845; and (3) the trial court=s exclusion of the evidence was harmful to
appellant=s case, see Tex.
R. App. P. 44.2; Ray v. State, 178 S.W.3d 833, 835-36 (Tex. Crim.
App. 2005).

In order to preserve an argument regarding the exclusion of
evidence, the proponent of the evidence must have actually attempted to
introduce the evidence during trial, and the trial court must have excluded the
evidence.  See Tex. R. App. P. 33.1,
Tex. R. Evid. 103(a)(2), Basham,
608 S.W.2d at 679; Ites v. State, 923 S.W.2d 675, 678 (Tex. App.CHouston [1st
Dist.] 1996, pet. ref=d).  The proponent of the evidence must
also have made the substance of the offered evidence known to the court through
either a bill of exception or offer of proof, unless the substance is apparent
from the context in which the evidence was offered.  See Tex. R. Evid. 103(a)(2).








Failure to present a particular argument to the trial court
in support of the admission of excluded evidence waives that argument for
appeal.  Reyna v. State, 168 S.W.3d 173, 176-79 (Tex. Crim. App. 2005); Rodriguez
v. State, 749 S.W.2d 576, 578 (Tex. App.CCorpus Christi
1988, pet. ref=d); see also Willover, 70 S.W.3d at 845-46
& n.4 (holding that the proponent of hearsay evidence must identify a
specific exception in order to preserve error in the exclusion of the
evidence); Warner v. State, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998)
(stating that a proper offer of proof must state the relevance of the excluded
evidence unless apparent).  In other words, a party complaining on appeal
regarding the exclusion of evidence must, at the earliest opportunity, have
done everything necessary to bring to the trial judge=s attention the
evidentiary rule or statute in question and its precise and proper application
to the evidence at issue.  Reyna, 168 S.W.3d at 177 (citing, inter
alia, 1 Stephen Goode, et al., Texas
practice:  Guide to the Texas Rules of Evidence: Civil and Criminal ' 103.2 (2d ed.
1993)).  The deciding factor in argument preservation is not whether the
appealing party is the State or the defendant or whether the trial court=s ruling is
legally correct in every sense; rather, the issue is whether the party
complaining on appeal brought to the trial court=s attention the
very complaint (or reasoning for admission of excluded evidence) that the party
makes on appeal.  Id.

IV.  Analysis








In the trial court, defense counsel argued that the
unadmitted evidence was relevant and admissible as Arebuttal@ evidence because Athe prosecutor has
created in the jury=s mind inferences of fear by implying that
Delmy Ruiz is very dangerous.@[2]  Counsel
suggested that Afairness@ required
allowance of testimony regarding Nunez=s dangerous acts
and threats.  He further asserted that at least one of the State=s witnesses had Aopened the door@ regarding the
issue of fear between appellant and Nunez.  Counsel did not mention any
specific evidentiary rules or statutes or any state or federal constitutional
provisions in making this argument.  During the pre-trial discussion on the
State=s motion in
limine, the trial judge suggested that if self-defense became an issue it might
A[open] up a lot
more.@  Defense counsel
responded A[i]f it[sic] an issue.@  At no point
during the proceedings did defense counsel argue that any excluded evidence was
admissible as proof of any defensive theory, much less self-defense
specifically.








On appeal, appellant argues that the evidence in question
was admissible in support of her theory of self-defense as a demonstration that
she was (1) logically reasonable in her perception that she was in danger of
imminent sexual assault, (2) justified in using the force that she did to
prevent the assault, and (3) morally reasonable in not retreating.  She
acknowledges that the evidence in question consisted of specific conduct
character evidence usually excluded under the Texas Rules of Evidence. 
However, she contends that the evidence is admissible under an exception to the
rules permitting admission of specific conduct character evidence to show the
character of a victim when the victim=s character is an
essential element of a defense.  In support of these propositions, she cites
numerous authorities, including Texas Penal Code sections 9.31 (concerning
self-defense) and 9.32 (concerning use of deadly force in defense of person),
Code of Criminal Procedure article 38.36 (concerning admission of relationship
evidence), and Texas Rules of Evidence 404(a)(2) (concerning character evidence
of a victim) and 405(b) (concerning use of specific conduct character evidence).
Tex. Penal Code Ann. '' 9.31, 9.32; Tex. Code Crim. Proc. Ann. art. 38.36; Tex. R. Evid. 404(a)(2), 405(b).  While
acknowledging that some of the evidence appears to be hearsay in form, she
argues admissibility under an exclusion from the definition of hearsay:  the
evidence was not offered for the truth of the matter asserted but was offered to
demonstrate the reasonableness of her perceptions and resulting conduct, citing
Rule of Evidence 801.  Tex. R. Evid. 801(d). 
Additionally, appellant contends that the trial court=s arbitrary
application of the evidentiary rules prevented her from presenting a complete
defense and thus violated her right to due process under the Fourteenth
Amendment to the United States Constitution, citing Holmes v. South Carolina,
547 U.S. 319 (2006).  U.S. Const.
amend. XIV.  We find that appellant has waived her issues on appeal because she
neither brought to the trial court=s attention the
evidentiary rule or statutes upon which she relies on appeal nor explained
their precise and proper application to the evidence at issue.  See Reyna,
168 S.W.3d at 176-79; Rodriguez, 749 S.W.2d at 578; 1 Goode, supra,
' 103.2. 
Accordingly, we overrule appellant=s sole issue.

We affirm the trial court=s judgment.

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment rendered
and memorandum Opinion filed August 7, 2007.

Panel consists of
Chief Justice Hedges and Justices Fowler and Edelman.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  Appellant further explained:  AIf it was an intimacy, he was violent.  He wanted all
of my attention just for him.  I could no longer visit my daughters, nor could
they come to visit me.  I loved the little Chihuahuas and the cats a lot.@  However, after a discussion at the bench regarding
appellant=s dogs and cats, the judge stated A[t]he last response will be struck.@  It is unclear under the circumstances whether the
judge meant to strike only the final sentence of appellant=s answer or the entire answer.





[2]  We term the evidence regarding which appellant
complains Aunadmitted@ as
opposed to Aexcluded@
because it is unclear from the record whether the trial court actually excluded
much of the evidence in question.