

# IN THE
# TENTH COURT OF APPEALS

## No. 10-07-00285-CR

**CHERYL ARNOLD,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

From the 82nd District Court
Robertson County, Texas
Trial Court No. 06-10-18167-CR

## MEMORANDUM OPINION

A jury convicted Cheryl Arnold of murder and sentenced her to ten years and one day in prison. On appeal, Arnold contends that: (1) the trial court erred by denying her requests for contemporaneous limiting instructions; (2) the trial court erred by failing to incorporate self-defense in the application paragraph of the jury charge; (3) the evidence is factually insufficient to support her conviction; and (4) the prosecutor engaged in prosecutorial misconduct. We affirm.

## FACTUAL BACKGROUND

Arnold was visiting a campsite during a rodeo at the local fairgrounds. Sam Pharms, Arnold's co-worker, and his wife Shondra had parked their RV at the campsite. Charles Franklin and his sister Angel Williams were also visiting the campsite.

Arnold first encountered Williams when Franklin told Williams to exit his Jeep so that he could take Arnold to retrieve some items from her car. Williams had been sleeping and gave Arnold a "dirty look." Franklin and Arnold next encountered Williams during their return to the campsite. Arnold described Williams as "rude," having ignored her request for a cigarette and complained about the brand of beer in Arnold's cooler. Williams took a beer and gave Arnold a cigarette.

Later that evening, Arnold caught Williams yelling at her five-year-old daughter. Arnold told Williams, "She's okay. She's alright." When she learned that Williams was again "bothering" her daughter, she felt angry and intended to stop the situation. She first approached Franklin, but he referred her to Williams.

The record contains differing versions of what occurred next. According to Arnold, she confronted Williams, who was seated, and they exchanged words. Williams stood, Arnold backed away, and Williams pushed Arnold into a pile of trash bags. Arnold looked up and saw Williams holding a knife. Arnold raised her hands, fearing that Williams would kill her. A struggle ensued, and Arnold managed to obtain the knife. When the fight ended, Williams walked away. Arnold sustained a cut on her left hand. Shondra took her inside the RV. Arnold called 9-1-1 several times because

the calls kept failing. She testified that she did not intend to kill Williams, but wanted to prevent Williams from harming her.

According to Franklin, Arnold hit Williams with a hard blow that sounded like a fist. Williams stood, and a fight ensued. Arnold fell when the women neared the trash. Franklin ran over and grabbed Williams. Arnold entered the RV. Franklin applied pressure to a cut on Williams' neck and waited for the paramedics. He believed that about sixty seconds elapsed between the initial confrontation and the end of the fight. He never saw either woman with a knife. He had heard about Williams' involvement in other fights, but was not aware that she carried a knife. He admitted that Williams sometimes has a volatile temper.

Shondra testified that she did not see Arnold strike Williams. However, she had briefly turned away and when she turned back, she saw Williams swing at Arnold. Arnold stumbled into the trash, and Williams fell on top of her. When the fight ended, Shondra told Arnold to give her the knife, took the knife from Arnold, and led Arnold inside the RV. She threw the knife in the sink. She left Arnold inside the RV, and when she later returned, the knife was missing. She did not know who owned the knife, had never seen it before, and never saw it again. She denied seeing Arnold with a knife, but testified that Arnold may have retrieved the knife from her pants pocket. Shondra did not believe that she cut Arnold when taking the knife away after the fight, but admitted that it was possible. Arnold did not recall Shondra taking the knife.

Alfrika Bosley, Shondra's daughter, was inside the RV with Arnold when she went to confront Williams. Bosley heard Arnold say that she was going to "handle it"

and saw Arnold pat her back pocket. She did not "directly" see a knife. Bosley watched through the RV window as Arnold approached Williams. She briefly stepped away from the window, and when she returned, she saw Arnold backing away as Williams stood. Bosley did not see Arnold strike Williams. Williams either hit or pushed Arnold, causing Arnold to fall into the trash. Arnold was swinging her hands like a "windmill." Bosley did not see Williams with a knife, but saw Arnold with a knife after the fight. She did not see Shondra take a knife from Arnold.

Charlene Gilbert was inside her RV when she heard "screaming and hollering." She went outside and saw Arnold standing by the trash holding a knife with a long blade, a kitchen knife, but she could not identify the knife because Arnold was holding the handle with both hands. Shondra ran over to Arnold and told Arnold to give her the knife. Shondra and Arnold went behind the RV, both holding the knife. Yet, Gilbert testified that she saw Shondra take the knife from Arnold. Shondra's method of removing the knife led Gilbert to believe that Arnold was cut at that time. Shondra and Arnold returned from behind the RV, without the knife, and went inside the RV.

Angela Sweed was returning to the campsite when she heard Shondra screaming. Arnold was lying on the trash bags. Shondra was standing over Arnold and yelling for the knife. Arnold was "waiving [the knife] back" as though trying to prevent Shondra from retrieving it. Franklin ran over and placed his hand on Williams's neck. Sweed helped Franklin carry Williams to a vehicle.

Investigator Joe Davis testified that Arnold's long acrylic fingernails were all intact.[1] She showed no signs of intoxication. After taking Arnold's statement, Davis had no information to indicate anything other than self-defense. In fact, Arnold told the 9-1-1 dispatcher that she was in a fight with a "girl who tried to stab me," that she was attacked, and that she was knocked into some trash bags. Davis described Arnold's voice on the 9-1-1 tape as "relaxed, not excited, not a whole lot of emotion", not like a person who had just taken a knife away from someone and stabbed or killed another person. Davis did not see a knife inside the RV.

Deputy Keith Foltermann testified that Arnold seemed upset. She complained about having problems with Williams all day and claimed that Williams attacked her with a knife, knocking her into the trash bags, that she took the knife from Williams, and that she must have stabbed Williams during the fight. Foltermann opined that this story was consistent with self-defense. Arnold told Foltermann that she believed she was cut before obtaining the knife, but admitted that she could have been cut when taking the knife from Williams. She did not know the knife's whereabouts, but had probably dropped it outside. Foltermann believed there was a "steak knife, like a -- not a -- a kitchen-type knife, like a butcher knife" in the sink inside the RV.

Dr. Reade Quinton testified that Williams suffered stab wounds to the left side of her neck and to her left side "midway between the chest and the abdomen." The neck wound penetrated the jugular vein, causing blood loss, and the trachea, causing difficulty breathing. Williams's blood alcohol content was .28 and she had ingested

---

[1] Arnold testified that she was wearing solar nails, which can last longer.

both hydrocodone and marihuana. Quinton opined that Williams's neck wound was consistent with being seated at the time of the blow. She could still stand, but would lose consciousness in a "minute or less." Williams's wounds were also consistent with being stabbed while lying on the ground or being on top of someone. Quinton concluded that the wounds were Williams's cause of death.

Police never recovered the knife used during the fight. Shondra gave Davis a kitchen knife that she kept in the RV. Neither Arnold's nor Williams's DNA was found on the knife. Davis opined that the kitchen knife was either not used during the fight or had been thoroughly cleaned. He believed that the kitchen knife was used during the fight. The State admitted the kitchen knife into evidence.

Shondra, Bosley, and Arnold all testified that the kitchen knife was not used during the fight. Shondra testified that the actual knife had two handles and one blade. Bosley testified that the kitchen knife was in the sink when Arnold confronted Williams and was still there when Arnold returned. Arnold testified that the knife had a split handle and was similar to a butterfly knife.

## FACTUAL SUFFICIENCY

Arnold's third point challenges the factual sufficiency of the evidence to support the jury's rejection of self-defense.

### Standard of Review and Applicable Law

Self-defense is justified when a person "reasonably believes" that force is "immediately necessary" to protect himself "against the other's use or attempted use of unlawful force." *See* TEX. PEN. CODE ANN. § 9.31(a) (Vernon Supp. 2008). Use of deadly

force is warranted where self-defense is justified under Section 9.31, a reasonable person would not have retreated,[2] and deadly force is reasonably necessary to protect himself against another's use or attempted use of deadly force. *See* Act of May 16, 1995, 74th Leg., ch. 235, § 1, 1995 Tex. Gen. Laws 2141 (amended 2007) (current version at TEX. PEN. CODE ANN. § 9.32 (Vernon Supp. 2008)); *Bumguardner v. State,* 963 S.W.2d 171, 173 (Tex. App.—Waco 1998, pet ref'd). When a defendant challenges the factual sufficiency of the rejection of a claim of self-defense, we review all the evidence in a neutral light and ask whether the State's evidence, taken alone, is too weak to support the finding and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence. *Zuliani v. State,* 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).

**Analysis**

Arnold points to nine pieces of evidence to support her contention that the jury's rejection of her self-defense claim is against the great weight and preponderance of the evidence. First, no one saw Arnold in possession of a knife before the fight. Witnesses did, however, see Arnold in possession of the knife after the fight. Second, the kitchen knife was too large to be concealed in a pocket. Shondra, Arnold, and Bosley all testified that the kitchen knife was not used during the fight. Arnold also identified a different knife as similar to the one she had used. Third, Arnold testified that Williams

---

[2]      The "retreat" portion of section 9.32 was deleted by the legislature in 2007 but was still in effect at the time of the offense. *See* Act of March 20, 2007, 80th Leg., ch. 1, §§ 3, 5, 6, 2007 Tex. Gen. Laws 1, 2.

approached her with a knife.  Yet, no one other than Arnold saw Williams in possession of a knife.

Fourth, Franklin's testimony that Arnold stuck Williams while she was seated is inconsistent with Quinton's testimony that the neck wound "would bleed pretty profusely", as no blood was found near Williams' chair.  Fifth, Franklin's testimony that he had to pull Williams away from Arnold after a minute-long fight is inconsistent with Quinton's testimony that a person with a neck wound could function for about thirty seconds to a minute.  We first note that Franklin did not see Arnold stab Williams with a knife, but testified that the blow sounded like a fist.  According to Quinton, that Williams was stabbed while seated was merely "one possibility."  The wound could have been inflicted while Williams was on the ground or on top of Arnold.  Quinton testified that if the blood were "free-flowing," the person could still function, but would lose consciousness in a minute or less and could possibly lose blood even faster if fighting.  As for how the wound could affect mobility, Quinton testified that "adrenaline can change the pattern."

This testimony supports a finding that Arnold could have stabbed Williams while she was seated.  Williams could possibly function for up to one minute after being stabbed.  The shortness of the fight indicates that Williams could still be conscious, requiring Franklin to pull her away from Arnold.  Sweed testified that Williams had not begun bleeding at the time that she helped Franklin carry Williams to a vehicle where Williams subsequently "passed away."  The evidence also supports a finding that Arnold could have struck Williams with her fist while she was seated and

then stabbed her during the fight itself. Either possibility explains the absence of blood near Williams' chair and Williams' ability to continue fighting after being stabbed.

Sixth, Franklin testified that Williams had a volatile temper, could "handle herself in a fight," and "[w]ouldn't take B.S." Seventh, Williams was intoxicated and had ingested both hydrocodone and marihuana. Davis testified that a person with a bad temper who is intoxicated and had ingested a narcotic could become more combative. While Williams's volatile tendencies and intoxicated state might have made her more combative, they do not establish that she was the possessor of a knife.

Eighth, Quinton and Davis both testified that the cut on Arnold's hand was consistent with a defensive wound. However, the wound also could have been caused by Shondra removing the knife from Arnold's hand or, given the struggle for the knife, perhaps Arnold was injured while taking the knife from Williams or when stabbing Williams with the knife. Davis testified that the cut could have been self-inflicted, could have occurred if Arnold switched hands during the fight, or could have been caused by a person taking the knife from her.

Finally, Arnold contacted 9-1-1 after the fight and cooperated with the police. That she did not flee from police or contacted 9-1-1 is not conclusive evidence of self-defense. *See Baxter v. State*, No. 06-07-00054-CR, 2007 Tex. App. LEXIS 9161, at *9 (Tex. App.—Texarkana Nov. 21, 2007, no pet.) (not designated for publication) (not fleeing does not constitute "substantial evidence" of innocence).

The pieces of evidence pinpointed by Arnold emphasize conflicts in the record regarding: (1) Williams' position at the time she was stabbed in the neck; (2) the type of

knife used to stab Williams; (3) the point at which Arnold was in possession of the knife; and (4) how Arnold received the cut to her left hand. However, it was within the jury's province to resolve such conflicts and decide which version of the events to believe. *See Wesbrook v. State*, 29 S.W.3d 103, 111-12 (Tex. Crim. App. 2000); *see also Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). In doing so, the jury could reasonably conclude that Arnold did not act in self-defense. Reviewing the record under the appropriate standard, we find the evidence factually sufficient to support the jury's rejection of Arnold's self defense claim. *See Zuliani*, 97 S.W.3d at 595. We overrule Arnold's third point.

## CONTEMPORANEOUS LIMITING INSTRUCTION

In her first point, Arnold challenges the trial court's denial of several contemporaneous limiting instructions that she requested during her own testimony, as well as that of Shondra and Bosley.

### Applicable Law

Rule of Evidence 105 provides: "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly…" TEX. R. EVID. 105(a). "[T]he language of Rule 105(a) requires, upon proper request, a limiting instruction to be given at the time the evidence is admitted." *Hammock v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001). "[A] trial court does not have discretion to postpone giving a properly requested limiting instruction when that request is made at admission of the evidence." *Id*. We review a

trial court's refusal to give a limiting instruction under an abuse of discretion standard. *See Shea v. State*, 167 S.W.3d 98, 103-04 (Tex. App.—Waco 2005, pet. ref'd).

### Shondra's and Bosley's Testimony

Arnold requested several contemporaneous limiting instructions on the basis of prior inconsistent statements during Shondra's and Bosley's testimony.

A witness's prior inconsistent statement may be used for impeachment. *See Willover v. State*, 70 S.W.3d 841, 846 n.8 (Tex. Crim. App. 2002); *see also* TEX. R. EVID. 613(a). Because such statements are hearsay, "unless they fall within some hearsay exception, they are admissible for impeachment purposes only (as opposed to substantive purposes)."[3] *Willover*, 70 S.W.3d at 846 n.8. Jurors "may consider the inconsistency as damaging to the witness's credibility, but may not use the evidence substantively." *Adams v. State*, 862 S.W.2d 139, 148 (Tex. App.—San Antonio 1993, pet. ref'd).

Shondra testified that Davis had suggested that the kitchen knife was used during the fight. She did not recall her prior statement, but remembered telling Davis that she saw the knife. She testified to taking the knife from Arnold. Arnold requested a limiting instruction. The trial court denied the request. Shondra admitted telling Davis that she took the knife from Arnold. Arnold again requested a limiting

---

[3] A prior inconsistent statement is not hearsay where the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is: (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding except a grand jury proceeding in a criminal case, or in a deposition; (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive; (C) one of identification of a person made after perceiving the person; or (D) taken and offered in a criminal case in accordance with Code of Criminal Procedure article 38.071 [Testimony of Child Who Is Victim of Offense]. TEX. R. EVID. 801(e)(1).

instruction, which the trial court denied. Her request for a running objection to the lack of a limiting instruction was granted.

Outside the jury's presence, the trial court noted Shondra's difficulty remembering and apparent desire not to testify.[4] The trial court asked when a limiting instruction should be given. Arnold requested a contemporaneous instruction. The trial court inquired about an instruction advising the jury that a witness can be impeached with a prior inconsistent statement, but that such may only be considered when assessing the witness's credibility. Arnold confirmed that she was requesting such an instruction. Both Arnold and the State agreed that such an instruction is applicable only as to testimony with which the witness is impeached.

When Shondra denied telling Davis that she saw Arnold retrieve the knife from her pants pocket, the State asked about her prior statement that "[Arnold] pulled it [the knife] from, I guess you know, cause she had her hand back like this, so." Shondra explained that she thought Arnold might have retrieved the knife from her pocket "[b]ecause she had her hands back and I assumed that's where it came from." The trial court denied Arnold's request for a limiting instruction, but granted her request for a running objection.

Shondra next testified that investigator Brian Bancroft was one of the men who threatened her when obtaining her statement.[5] She subsequently expressed doubt that Bancroft was one of the men. The prosecutor referred to her statement and asked

---

[4]     Shondra gave police several different statements, initially denying that she saw anything.

[5]     Shondra alleged that she was threatened by investigators.

Shondra to "follow along" with him. Arnold requested a limiting instruction on the "proper use of impeachment testimony." The trial court stated that a limiting instruction would be given in the charge and granted Arnold a running objection.

Bosley testified to hearing Arnold state her intention to "handle it" before confronting Williams. The State began to ask about a previous statement when Arnold requested a limiting instruction. The trial court denied the request, but granted a running objection. The State then asked Bosley if she recalled telling Davis that Arnold had a knife. Bosley denied doing so. Over Arnold's objection, the trial court gave the State permission to play a portion of Bosley's recorded statement. Bosley again denied saying that Arnold had a knife. Arnold requested a limiting instruction to accompany playing of the tape. The trial court stated that an instruction would be included in the charge and granted a running objection. After the tape was played, Bosley admitted saying that Arnold had a knife in her back pocket, but testified that she did not "directly know that Cheryl [Arnold] came out of our RV with a knife." She merely saw Arnold touch her back pocket when exiting the RV to confront Williams.

Bosley later testified that the kitchen knife was not the knife that she said Arnold had in her possession. The State sought to admit the entire tape of Bosley's statement. Arnold requested an instruction limiting the jury's consideration of prior inconsistent statements for purposes of credibility and not as evidence of guilt. The trial court stated that the instruction would be included in the charge. The entire tape was admitted into evidence.

The State argues that contemporaneous limiting instructions were not required because "confrontation of the witnesses with the prior inconsistent statement caused both witnesses to modify their in court testimony to include all but one detail of the prior statements." However, where "a witness only qualifiedly or partially admits to making a prior inconsistent statement, the statement may be used to impeach him." *Staley v. State*, 888 S.W.2d 45, 49 (Tex. App.—Tyler 1994, no pet.) (citing *McGary v. State*, 750 S.W.2d 782 (Tex. Crim. App. 1988)). Shondra's and Bosley's prior statements do not fall within any hearsay exception and so were admissible for impeachment purposes only. *See Willover*, 70 S.W.3d at 846 n.8; *see also* TEX. R. EVID. 801(e)(1).

The risk that the jury would consider the testimony as substantive evidence of Arnold's guilt warranted a contemporaneous limiting instruction. *See Rankin v. State*, 974 S.W.2d 707, 712 (Tex. Crim. App. 1996) ("If limiting instructions impede the improper use of evidence, then an instruction given when the evidence is admitted limits that evidence to its proper scope immediately. An instruction given for the first time during the jury charge necessarily leaves a window of time in which the jury can contemplate the evidence in an inappropriate manner."); *see also Hammock*, 46 S.W.3d at 894. The trial court erroneously denied Arnold's requests for such instructions.

The failure to give a timely limiting instruction pursuant to Rule 105(a) is nonconstitutional error. *See Jones v. State*, 119 S.W.3d 412, 423-24 (Tex. App.—Fort Worth 2003, no pet.). We may not reverse for nonconstitutional error unless, after examining the record as a whole, we have a "fair assurance that the error did not have a substantial *and* injurious effect or influence in determining the jury's verdict." *Garcia v.*

*State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). We disregard any error that does not affect the defendant's substantial rights. *See* TEX. R. APP P. 44.2; *see also* TEX. R. EVID. 103(a).

The State did discuss the prior inconsistent statements during closing argument. The State described Shondra as a "difficult witness" who did not want to get involved and a "recalcitrant witness," but who testified that she did not see Williams with a knife, she did see Arnold with a knife, she took the knife from Arnold, she placed the knife in the RV, and she later returned to find the knife missing. The State noted that Bosley heard Arnold say that she had a knife and planned to "take care of it" and saw Arnold pat her pocket.[6]

The defense reminded the jury that neither Shondra's nor Bosley's prior inconsistent statements could be used to determine guilt. Counsel mentioned Bosley's prior inconsistent statement regarding whether she saw Arnold leave the RV with a knife. Counsel further informed the jury that witnesses, such as Shondra and Bosley, are "tugged in many different ways", "[i]t is not unusual for these types of witnesses not to want to get involved in the case, for various reasons," and investigators pressured both witnesses. Counsel explained that Davis suggested to Shondra that the

---

[6]     Arnold contends that the record does not show that Bosley ever heard Arnold make such a statement; thus, the State was improperly attempting to "treat a prior inconsistent statement as substantive evidence." *See Hughes v. State*, 4 S.W.3d 1, 3-5, 7 (Tex. Crim. App. 1999) (The State is barred from using "prior inconsistent statements under the guise of impeachment for the primary purpose of placing substantive evidence before the jury which is not otherwise admissible"). This rule normally applies to the admission of impeachment evidence, requiring the trial court to consider the "State's knowledge that its own witness will testify unfavorably." *Id*. at 5. Moreover, when the prosecutor made this argument, Arnold merely objected that the evidence was outside the record because Bosley had not testified to these facts. *See Hardeman v. State*, No. 10-01-00269-CR, 2003 Tex. App. LEXIS 5020, at *7-8 (Tex. App.—Waco June 11, 2003, pet. ref'd) (not designated for publication) (Hardeman objected to "hearsay," not to a *Hughes* violation; he failed to preserve a *Hughes* complaint for appeal.).

kitchen knife was used during the fight and that Shondra lied to the police because she was afraid. Counsel stated that Bosley was warned about being charged with a crime and so would have agreed to anything. He stated that Davis placed pressure on Shondra and Bosley so that they would "agree to the suggested questions that he was asking." The defense argued that the State's witnesses "weaved a tangled web of inconsistency."

We have already determined that the evidence is factually sufficient to support the jury's rejection of Arnold's self-defense claim. Absent from the inconsistent statements provided by Shondra and Bosley, the record contains other evidence from which the jury could infer that Arnold did not act in self-defense. *See Berry v. State*, No. 05-04-01161-CR, 2005 Tex. App. LEXIS 4960, at *8 (Tex. App.—Dallas June 28, 2005, no pet.) (not designated for publication) (in the absence of a limiting instruction, the record contained "evidence, independent of the prior inconsistent statements, to prove the assault"). Additionally, the trial court's charge instructed the jury that a witness's prior inconsistent statement could only be considered for impeachment purposes to asses the witness's credibility.[7] This "reduced the risk the jury might misuse the evidence during jury deliberations." *Jones v. State*, 944 S.W.2d 642, 654 (Tex. Crim. App. 1996).

---

[7] The instruction states:

> You are instructed that a witness may be impeached by showing that he or she has made other and different statements out of court from those made before you at the trial. Such impeachment evidence may be considered by you to aid you in determining if it does so, the weight, if any, to be given the testimony of the witness at trial and his or her credibility, but such impeaching evidence, if any, is not to be considered as tending to establish the alleged guilt of the defendant in such case.

After examining the record as a whole, we have a fair assurance that the trial court's error in failing to give instructions contemporaneously with the admission of the statements did not influence the jury, or had but a slight effect.

### Arnold's Testimony

At a hearing outside the jury's presence immediately before Arnold testified, the trial court authorized the State to ask Arnold about a pending marihuana charge and a terroristic threat conviction. Arnold's request for a limiting instruction was denied.[8] The trial court stated that a similar instruction would be given in the charge.

We first note that the State presented no evidence of Arnold's pending marihuana charge. Because the evidence was never admitted, a contemporaneous limiting instruction was not required. *See Hammock*, 46 S.W.3d at 894; *see also Taylor v. State*, No. 10-01-00109-CR, 2004 Tex. App. LEXIS 2338, *13-14 (Tex. App.—Waco Mar. 10, 2004, pet. ref'd) (not designated for publication) (finding no error where the trial court denied contemporaneous limiting instructions in cases where no evidence of an extraneous offense was presented).

---

[8] The defense specifically requested the following instruction:

> You are instructed that evidence offered by the State that the defendant has previously been convicted of an offense other than the one on trial in this case, cannot be considered by you for the purposes of determining the guilt or innocence of the defendant concerning the offense on trial in this case unless you first find beyond a reasonable doubt that she was convicted of a different offense, and then only for the sole purpose of assisting you, if it does, in determining the credibility of the said Cheryl Arnold as a witness in this case and for no other purpose.

The trial court's jury charge included an instruction on extraneous offense evidence for purposes of rebutting the defensive claim of self-defense.

The defense first raised the terroristic threat conviction during Arnold's direct-examination. Arnold pulled a pocket knife from her back pocket during an altercation with a woman at a restaurant. She never opened the pocket knife. On cross-examination, the State asked whether Arnold received a sixty-day sentence for the conviction. The trial court then denied Arnold's request for a contemporaneous instruction limiting consideration of the evidence to the purpose of rebutting a defensive theory, stating that the appropriate instruction would be submitted in the charge. Arnold admitted that, according to the police report, she "pulled her knife to make sure she wouldn't lose the fight."

The trial court erred by denying Arnold's request for a contemporaneous limiting instruction regarding the terroristic threat conviction. *See Lemmons v. State*, 75 S.W.3d 513, 525 (Tex. App.—San Antonio 2002, pet. ref'd) (trial court erred by denying defendant's request for a contemporaneous limiting instruction on extraneous offense evidence). However, we find the error to be harmless.

During closing argument, the prosecutor explained that it had shown that Arnold was convicted, beyond a reasonable doubt, of the terroristic threat conviction. The prosecutor further argued that the conviction involved another incident where Arnold pulled a knife from her back pocket and, although Arnold disclosed the offense to police, she did not provide the details. He described the situation as "someone bringing a knife to a fight that they started themselves, to make sure they wouldn't lose the fight, and they didn't." The defense also discussed the conviction, arguing that it occurred nine years earlier and was "bad judgment."

The trial court's charge instructed the jury that extraneous offenses could not be considered as evidence of Arnold's guilt, but solely to rebut the defensive claim of self-defense.[9] *See Jones*, 944 S.W.2d at 654. The evidence was presented "toward the end of trial"; thus, "there was a relatively short interval between the introduction of the evidence and the trial court's reading of limiting instructions in the court's charge." *Jones*, 119 S.W.3d at 424. The terroristic threat conviction was not "more heinous or inflammatory than the charged offense, minimizing its prejudicial effect even in the absence of a contemporaneous limiting instruction." *Gregory v. State*, 159 S.W.3d 254, 262 (Tex. App.—Beaumont 2005, pet. ref'd). The evidence was such that, even without evidence of the conviction, the jury could have rejected Arnold's self-defense theory. Our review of the entire record gives us fair assurance that the trial court's error did not influence the jury, or had but a slight effect.

Because we hold that the trial court's errors were harmless, we overrule Arnold's first point.

**SELF-DEFENSE**

In her second point, Arnold complains that the trial court erred by failing to include self-defense in the application paragraph of the jury charge.

---

[9]     The charge states:

> You are instructed that evidence offered by the State that the defendant has previously been convicted of an offense or has committed a different offense, other than the one on trial in this case, cannot be considered by you for the purpose of determining the guilt or innocence of the defendant concerning the offense on trial in this case, unless you first find beyond a reasonable doubt that she was convicted of the offense or committed the different offense and then only for the sole purpose of assisting you, if it does, in rebutting the defensive claim of self-defense, and for no other reason.

**Applicable Law**

A jury charge must contain: (1) "an application paragraph specifying all of the conditions to be met before a conviction [] is authorized"; (2) "an application paragraph authorizing a conviction under conditions specified by other paragraphs of the jury charge to which the application paragraph necessarily and unambiguously refers"; or (3) "some logically consistent combination of such paragraphs." *Plata v. State*, 926 S.W.2d 300, 304 (Tex. Crim. App. 1996), *overruled on other grounds*, 953 S.W.2d 234 (1997); *Degrate v. State*, 86 S.W.3d 751, 753 (Tex. App.—Waco 2002, pet. ref'd).

**Analysis**

The trial court's jury charge is divided into several sections. Section three applies the elements of the offense to the facts of the case, but makes no mention of self-defense:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 17th day of September, 2006, in Robertson County, Texas, the defendant, CHERYL ARNOLD, did then and there, with intent to cause serious bodily injury to an individual, namely, ANGEL WILLIAMS, commit an act clearly dangerous to human life that caused the death of said ANGEL WILLIAMS, by stabbing her in the neck with a knife (and that said knife was then and there a deadly weapon) as set forth in the indictment, then you will find the defendant, CHERYL ARNOLD, guilty of murder as charged in the indictment.
>
> Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt as to whether defendant is guilty of murder, then you will find her not guilty.

However, section five of the charge includes both abstract and application paragraphs regarding self-defense. The application paragraphs state:

> So, if you find from the evidence beyond a reasonable doubt that the defendant, CHERYL ARNOLD, did kill ANGEL WILLIAMS by stabbing her in the neck with a knife, as alleged, but you further find from the

evidence, or you have a reasonable doubt thereof, that viewed from the standpoint of the defendant at the time, from the words or conduct or both, of deceased, it reasonably appeared to defendant that her life or person was in danger and there was created in her mind a reasonable expectation or fear of death or seriously bodily injury from the use of unlawful deadly force at the hands of the deceased, and that acting under such apprehension and reasonably believing that the use of deadly force on her part was immediately necessary to protect herself against ANGEL WILLIAMS use or attempted use of unlawful deadly force, she stabbed the deceased in the neck with a knife, and that a reasonable person in defendant's situation would not have retreated, then you will find the defendant not guilty.

…

Now, bearing all of the foregoing instructions in mind, if you find from the evidence that the defendant, CHERYL ARNOLD was acting in self defense against ANGEL WILLIAMS, or if you should have a reasonable doubt thereof, then defendant would be guilty of no offense and you will find the defendant not guilty.

Arnold did not object to either section three or section five of the charge.

The trial court's application paragraphs are "logically consistent," requiring the jury to first determine whether the State had proved the elements of the offense beyond a reasonable doubt and, if so, to then determine whether Arnold acted in self-defense.[10] *See Smith v. State*, No. 2-05-207-CR, 2006 Tex. App. LEXIS 5750, at *14-17 (Tex. App.—Fort Worth June 29, 2006, no pet.) (not designated for publication) (jury charge was "not illogical or confusing" where first application paragraph required jury to first determine whether the State established Smith's guilt beyond a reasonable doubt and second application paragraph instructed jury on the defense of justification); *see also Wingo v. State*, 143 S.W.3d 178, 190 (Tex. App.—San Antonio 2004), *aff'd,* 189 S.W.3d 270 (Tex.

[10]    Combining self-defense in a single application paragraph is also an appropriate method. *See* ELIZABETH BERRY, GEORGE GALLAGHER & PAUL MCCLUNG, 1 TEXAS CRIMINAL JURY CHARGES § 3.1870 (2008).

Crim. App. 2006) ("We do not believe the trial court's arrangement of the jury charge was illogical or that placing the defensive instructions after the application paragraph was the only logical arrangement."). The paragraphs need not have been combined. *See Peterson v. State*, No. 05-99-01054-CR, 2001 Tex. App. LEXIS 4736, at *11-12 (Tex. App.—Dallas July 12, 2001, no pet.) (not designated for publication) (rejecting contention that "the trial court was required to include the elements of the offense and the elements of any defensive issues into one application paragraph."). We, therefore, find no error in the jury charge and overrule Arnold's second point.

## PROSECUTORIAL MISCONDUCT

In Arnold's fourth point, she alleges several instances of prosecutorial misconduct: (1) misstating facts during cross-examination; (2) pretending to understand that a witness testified to something that he or she did not and then cross-examining the witness on that basis; (3) putting words into the witness' mouths; (4) bullying and arguing with witnesses; and (5) making misrepresentations regarding the law. Arnold contends that the totality of these alleged errors "undermined the reliability of the factfinding process and her right to a fair and impartial trial."

To preserve error in cases of prosecutorial misconduct, the defendant must (1) make a timely and specific objection; (2) request an instruction that the jury disregard the matter improperly placed before the jury; and (3) move for a mistrial. *Montoya v. State*, 43 S.W.3d 568, 572 (Tex. App.—Waco 2001, no pet.); *see Cook v. State,* 858 S.W.2d 467, 473 (Tex. Crim. App. 1993). Arnold did not object to many of the alleged acts of misconduct. Of those to which she did object, she did not object on grounds of

prosecutorial misconduct. Nor did she request instructions to disregard. Accordingly, Arnold has not preserved her complaint for appellate review. *See Montoya*, 43 S.W.3d at 572; *see also* TEX. R. APP. P. 33.1.

The judgment is affirmed.


FELIPE REYNA
Justice

Before Chief Justice Gray,
     Justice Vance, and
     Justice Reyna
     (Chief Justice Gray dissents. A separate opinion will not issue.)
Affirmed
Opinion delivered and filed December 31, 2008
Do not publish
[CR25]